DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

# Residential
# Lease Agreement

EXHIBIT

A

MASTER RESIDENTIAL LEASE 11.15.19

Initial 

(a)  **RESIDENTIAL LEASE AGREEMENT**

This Residential Lease Agreement ("Lease") is executed on 08/10/2022 by and between Bay Street Homes, LLC, hereinafter called the "Landlord", and Grady Barton, hereinafter [collectively] called the "Tenant", for the rental of a single-family home located at, and commonly known as 111 Wrenwood Dr, City of St Clair, County of Franklin County, MO, hereinafter called the "Premises". The Premises is legally described in <u>Exhibit A</u> attached hereto.  Attached to this Lease and made a part hereof is that certain Addendum to Lease Agreement – Option to Purchase dated of even date herewith, by and between the Landlord, as optionor, and the Tenant, as optionee (the "Option Addendum") and that certain Addendum to Lease Agreement – State-Specific Provisions, dated of even date herewith, by and between the Landlord and the Tenant (the "State Addendum").

(b)  **TENANT AND OCCUPANT INFORMATION**

Tenant and all occupants of the Premises are listed below:

| Full Name | Age | Cell Phone Number (if over 18) | Email (if over 18) |
|---|---|---|---|
| Grady Barton | - | 5733669159 | repomasterstl@gmail.com |
| - | - | - | - |
| Dallene Barton | 39 | | |
| ██████████ | 17 | | |
| ██████████ | 12 | | |

Emergency Contact (please include someone that is not an occupant at the Premises)

| Full Name | Phone Number | Email |
|---|---|---|
| Makayla Barton | ████████ | ████████ |

(c)  **TERM**

The term of this Lease (the "Lease Term") shall be a period of thirty-six (36) months beginning on 08/10/2022 and ending on 08/10/2025.

(d)  **CONTINUATION OF LEASE**

Upon expiration of the Lease Term, all of the Tenant's rights to occupy the Premises shall cease and terminate.

(e)  **Reserved.**

(f)  **Reserved.**

(g)  **Reserved.**

(h)  **PAYMENTS**

Initial payments due at signing under this Lease are as follows:

1

MASTER RESIDENTIAL LEASE 11.15.19                    Initial 

| Total Due at Signing | Description | Amount |
|---|---|---|
| An amount equal to one (1) Total Monthly Payment ("First Payment"). | Applied in a pro-rated manner (as applicable) as credits to the Total Monthly Payment due in months 1 and 2 of the Lease Term. | $1,900 |
| Option Down Payment | A portion of Tenant's Total Option Payments as defined in the Option Addendum. | $3,800 |
| Earnest Money Payment | An initial payment towards the Option Down Payment already received by Landlord and subtracted from the Total Balance Due at Signing. | $500 |
| **Total Balance Due at Signing** | **All or some of this total balance may have already been received by Landlord at signing; Tenant shall only be responsible for any outstanding amount not already received.** | **$5,200** |

For the purposes of clarity, the first two months of Total Monthly Payments shall be calculated as follows. With the exception of these first two (2) months, the Total Monthly Payments shall be as set forth in the table in Section (f) below.

| Month | Total Monthly Payment | Credit from First Payment | Total Balance Due on First of the Month |
|---|---|---|---|
| Month 1 of Lease Term (Prorated /partial month) | $1,348 | ($1,348) | $0 |
| Month 2 of Lease Term (First full month) | $1,900 | ($552) | $1,348 |

(i)  **RENT; MONTHLY PAYMENTS**

The term "Rent" means any base rent, additional rent or any other sums due and owing from the Tenant to the Landlord under this Lease, including, without limitation, Monthly Option Payments (as defined in the Option Addendum).  All payments to the Landlord must be made electronically. No other form of payment or any partial payment will be accepted unless it is approved in advance by the Landlord in its sole discretion. Any acceptance of a partial payment by the Landlord shall not constitute a waiver of the Landlord's right to strictly enforce this and any and all other terms of this Lease. Rent is to be paid in full,

MASTER RESIDENTIAL LEASE 11.15.19                                          Initial

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

without notice, demand, deduction or set off. In the event any Rent is due for a partial calendar month or year, the Rent shall be equitably adjusted to reflect that portion of the Lease Term within such month or year. Rent and the Monthly Option Payment are referred to collectively herein as the "Total Monthly Payment", which is due to Landlord in advance on or before the first (1st) day of each month in advance for the following month's Rent (i.e., payment for January is due on or before January 1st). For the avoidance of doubt, a payment that is initiated by electronic transfer (including but not limited to ACH) on or before the first (1st) day of the month and received on a later date shall be treated as having been received on the first (1st) day of the month for purposes of this section.

**Total Monthly Payment schedule during the Lease Term:**

| Lease Period | Monthly Rent | Monthly Option Payment | Total Monthly Payment |
|---|---|---|---|
| Year 1 (08/2022 to 08/2023) | $1,730 | $170 | $1,900 |
| Year 2 (08/2023 to 08/2024) | $1,810 | $170 | $1,980 |
| Year 3 (08/2024 to 08/2025) | $1,890 | $170 | $2,060 |

(j)     **LATE PAYMENTS AND TENANT DEFAULTS**

Rent is to be paid on or before the first (1st) day of each month in advance. The late payment of any Rent will cause Landlord to incur additional costs, including administration and collection costs, processing and accounting expenses, and increased debt service. If Landlord has not received the full amount of rent owed by the fifth (5th) calendar day of each month, then the Landlord will assess a late fee that amounts to five percent (5%) of the delinquent outstanding amount ("**Late Fee**"), which Tenant and Landlord agree represents a reasonable estimate of the cost incurred by Landlord; provided, however, if the last day of the five (5) day grace period established above occurs on a Sunday or a legal holiday in the State where the Premises is located, Landlord shall not impose the Late Fee, so long as the Rent is paid on the next business day. Landlord and Tenant recognize that the damage that Landlord will suffer if Tenant fails to pay these amounts is difficult to ascertain and the Late Fee is the best estimate of the damage that Landlord will suffer if Tenant is late with its payment. For avoidance of doubt, an electronic payment that has been successfully initiated but subsequently fails shall be deemed to be a failure to receive payment.

The Tenant will be in default under this Lease if (i) the Tenant fails to comply with any of the terms and provisions of this Lease, including without limitation any failure to pay Rent when due, or any failure to perform any term herein; (ii) the Tenant fails to comply with any current rules and regulations or any that may be hereafter prescribed by the Landlord; (iii) Tenant vacates or expresses an intent to vacate prior to the expiration of the Lease Term; or (iv) the Tenant fails to comply with any duties imposed on the Tenant pursuant to this Lease or by any applicable legal requirements.

Upon Tenant's default, the Landlord, at its option, after not less than fifteen (15) days written notice of such default given in a manner required by law, may, unless the Tenant within said time has cured such default, (x) exercise any and all rights and remedies available to the Landlord at law or in equity, including initiating eviction proceedings; and (y) may immediately terminate this Lease or exercise any other rights or remedies provided to Landlord under this Lease. The Landlord may take any of the following steps: enter the Premises and remove the Tenant and any person or property therefrom (with or without terminating the Lease); use dispossession, eviction or other lawsuit method to take back the Premises. All rights and remedies of the Landlord under this Lease shall be cumulative and shall not be exclusive of any other rights

3

MASTER RESIDENTIAL LEASE 11.15.19          Initial 

and remedies provided to Landlord under applicable law. For avoidance of doubt, the Tenant's Option to Purchase terminates concurrently with the Lease termination. Should the Landlord terminate this Lease due to defaults outlined herein, in addition to any other right, remedy or power it may have, the Landlord may declare to be due and payment immediately, the then present value calculated using a discount factor of eight percent (8%) per annum or the rate permitted by applicable law, whichever is lower, [equal to the then current "Prime Rate" of interest, as published by The Wall Street Journal or such higher rate as may be required by applicable law] of the difference between (x) the entire amount of Rent (minus the Monthly Option Payments) and other charges and assessments which in the Landlord's reasonable determination would have become due and payable during the remainder of the Lease Term (in the absence of the termination of this Lease), and (y) the then fair market rental value of the Premises for the remainder of the Lease Term (as if this Lease had not been terminated). Upon the acceleration of such amounts, the Tenant agrees to pay the same at once, in addition to all rent, costs, charges, assessments and reimbursements due; provided, however, that such payments will not constitute a penalty but as liquidated damages for the Tenant's failure to comply with the terms and provisions of this Lease. The Tenant and Landlord acknowledge and agree that the Landlord's actual damages in such an event are impossible to ascertain and that the amount set forth herein is a reasonable estimate thereof. The Landlord may re-rent the Premises and anything in it for any term. To the extent permitted under applicable law, except as otherwise provided in the State Addendum, in a proceeding to get possession of the Premises: (i) the Tenant agrees to make no motions to the court concerning issues such as habitability or delay the legal process with requests for additional time; (ii) the Tenant waives all rights to return to the Premises after possession is returned to the Landlord by a court; and (iii) the Landlord and the Tenant agree to waive the right to trial by a jury in any matter which comes up between the parties under or because of this Lease. The Tenant shall not have the right to make a counterclaim or set off. If the Tenant abandons or vacates the Premises while in default of any Rent payment or after the expiration of the Lease Term, the Landlord may consider any property left on the Premises to be abandoned and may dispose of the same in any manner allowed by law without any accounting or compensation to Tenant.

Notwithstanding the foregoing, the Tenant will be in immediate and non-curable default under this Lease if the following occurs: (i) the Tenant, Tenant's guest, invitees or any occupant of the Premises violate any terms or provision of this Lease,  or any rules or regulations that may be hereafter prescribed by the Landlord, or any fire, safety health, or criminal laws, regardless of whether arrest or conviction occurs; (ii) the Tenant abandons the Premises in accordance with Section (s) below; (iii) the Tenant gives incorrect or false information in the rental application; (iv) the Tenant, or any occupant is arrested, convicted or given deferred adjudication for a criminal offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; and (v) any illegal drugs or paraphernalia are found in the Premises or on the person of the Tenant, Tenant's invitees, guests or any occupant while on the Premises or otherwise allowed by law. If the Tenant is in an immediate and non-curable default, the Landlord may terminate the Lease and pursue any rights and remedies afforded to it under the law, including without limitation, terminating this Lease or Tenant's right to possession of the Premises, subject, however, to any notice, grace and or cure periods provided Tenant under applicable law. In addition, the Landlord may recover liquidated damages in the amount described in the prior paragraph, and Tenant acknowledges and agrees such liquidated damages are a reasonable estimate of the damage suffered by the Landlord.

(k)    **MULTIPLE EVICTIONS**

Subject to provisions of the Option Addendum, the State Addendum, and any applicable state laws, Landlord, at its sole discretion, may terminate the Lease and the Tenant's right of possession if the Tenant has been subject to three or more eviction proceedings initiated by the Landlord in any twelve (12) month period. If the Tenant fails to quit the Premises after the Lease has been terminated, the Landlord may proceed with eviction proceedings as set forth herein.

(l)    **LEGAL FEES AND COSTS**

MASTER RESIDENTIAL LEASE 11.15.19                                    Initial

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

Whether or not an eviction proceeding or action is commenced by Landlord with respect to a Tenant default, Tenant shall, to the extent not prohibited by law, be responsible for paying any legal fees and costs incurred by the Landlord for enforcing its right under this Lease including, but not limited to, pursuing an eviction proceeding or partial eviction proceeding. This includes, but is not limited to, any lawful step in the process of enforcing compliance or pursuing the remedy of eviction and does not require that any court case be filed to constitute eviction proceedings.

(m) **POSSESSION OF THE PREMISES**

The Tenant shall not be entitled to possession of the Premises until the Option Down Payment and first month's Rent (or prorated portion thereof), is paid in full. The Landlord shall not be liable for any damages claimed by the Tenant for any delay in the commencement date as a result of a failure to make payment.

Notwithstanding the former paragraph, the Tenant shall be entitled to possession on the first day of the Lease Term or on the date mutually agreed upon by both the Landlord and the Tenant, and shall yield possession to the Landlord on the last day of the Lease Term, unless otherwise agreed by both parties in writing.  At the expiration of the Lease Term, the Tenant shall remove Tenant's personal property and peaceably yield up the Premises to the Landlord in the condition described in the paragraph of this Lease entitled "MOVING OUT". For the avoidance of doubt, any fixtures, equipment or appliances that were in or on the Premises at the commencement of the Lease, or which were supplied by or purchased by Landlord during the course of the Lease, shall not be removed by the Tenant unless otherwise agreed in writing by Landlord.

(n) **ACCESS TO THE PREMISES**

Upon the beginning of the Lease Term, the Landlord agrees to use commercially reasonable efforts to give access to the Tenant in the form of keys, fobs, cards, or any type of keyless security entry as needed to enter the common areas and the Premises. For avoidance of doubt, Landlord's delay in providing Tenant with full access to non-essential facilities (e.g., a community pool or recreation center) shall not be a breach of Landlord's duties under this Lease so long as it does not materially impair Tenant's use and enjoyment of the Premises.  At the end of this Lease, all such keys, fobs, cards or other forms of access provided to the Tenant shall be returned to the Landlord or a fee (not to exceed $100.00) will be charged to the Tenant.

(o) **TENANT'S EXAMINATION AND ACCEPTANCE OF THE PREMISES**

The Tenant acknowledges that he/she has examined the Premises and his/her acceptance of this Lease is conclusive evidence that said Premises is in good and satisfactory order and repair unless otherwise specified herein; and the Tenant agrees that no representations as to the condition of the Premises have been made and that no agreement has been made to redecorate, repair or improve the Premises unless hereinafter set forth specifically in writing in a separate maintenance order. The Tenant takes the Premises in its AS-IS condition. THE TENANT AGREES THAT THE LANDLORD MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AS TO FITNESS, MERCHANTABILITY, USE OR CONDITION OF THE PREMISES. The Tenant shall keep the Premises in a clean and orderly condition, including, but not limited to, appliances, plumbing, floor coverings, and all personal property provided by the Landlord, throughout the Lease Term and upon surrendering the Premises to the Landlord. The Tenant will bear the cost of any cleaning or repair performed by the Landlord to restore the Premises to the condition upon the commencement of this Lease, except for wear resulting from ordinary use of the Premises.

(p) **MOVE-IN INSPECTION**

The Tenant acknowledges and agrees that (i) the Tenant has received and reviewed a copy of the home inspection report for the Premises, which is attached hereto and incorporated herein at <u>Exhibit D</u>, (ii) repair or remediation of any items listed on such home inspection report is the sole obligation of the Tenant, not the Landlord and (iii) that the Premises is tenantable and habitable in its current condition.

MASTER RESIDENTIAL LEASE 11.15.19                    Initial

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

(q)    **USE OF THE PREMISES**

The Tenant shall not use the Premises for any purpose other than as a personal residence without the prior written approval from the Landlord (such approval to be in the Landlord's sole discretion). "Working from home" is permitted as long as the Premises is not the primary location of the business where clients and/or customers would be coming/seen, or where the use violates any covenants or restrictions imposed upon the Premises. The Tenant shall not assign this Lease, sublet the Premises, give accommodations to any roomers or lodgers, or permit the Premises to be used for any purpose other than as the primary full-time residence for the Tenant and his or her immediate family members. The Tenant must abide by all applicable occupancy regulations including the maximum occupancy rules for the applicable jurisdiction.

The Tenant shall not cause the Premises to be unoccupied for more than the maximum time period permitted under State or local law, or 30 consecutive days, whichever is fewer, without the written consent of the Landlord.  For the avoidance of doubt, in addition to the restrictions contained in this paragraph, use of the Premises is subject to all applicable restrictions contained in State and local laws and regulations regarding residential rental property, including without limitation restrictions on the number of occupants.

(r)    **SUBLETTING**

The Tenant shall not have the right to sublet the Premises or any part thereof without the prior written consent of the Landlord (such consent to be in the Landlord's sole discretion). If consent is granted by the Landlord, the Tenant will be responsible for all actions and liabilities of the subtenant, including, but not limited to, damage to the Premises, non-payment of Rent, and any eviction process (in the event of an eviction the Tenant shall be responsible for all court filing fees, attorneys' fees, and any other fees associated with removing the subtenant). The consent by the Landlord to one sublet shall not be deemed to be consent to any subsequent subletting.

(s)    **ABANDONMENT**

Subject to the provisions of the Option Addendum and State Addendum, if the Tenant vacates or abandons the Premises for a time period in excess of the minimum set by State or local law or three (3) consecutive days, whichever is fewer, without the written consent of the Landlord, the Landlord shall have the right to terminate this Lease immediately and remove all belongings including any personal property from the Premises.

(t)    **ASSIGNMENT**

The Tenant shall not assign this Lease without the prior written consent of the Landlord (such consent to be in the Landlord's sole discretion). The consent by the Landlord to one assignment shall not be deemed to be consent to any subsequent assignment.  Without the consent of the Tenant, the Landlord may transfer all or any portion of the Premises and any of its rights under this Lease.  If Landlord assigns its rights under this Lease, then Landlord shall thereby be released from any further obligations hereunder arising after the date of transfer.

(u)    **UTILITIES**

In addition to Rent, the Tenant shall pay directly for all utilities, services and charges provided to the Premises, including any and all deposits required, and must keep each one current. The Tenant is responsible for all utilities, including, but not limited to, electricity, garbage, sewer, water, gas, natural gas, oil, phone, cable television, satellite, and internet used in or charged against the Premises during the Lease Term. The Tenant is responsible for all late fees, disconnect and reconnect fees, lien charges, and any other charges and/or penalties assessed against the Premises as a result of the Tenant's use or failure to timely pay any utility charge. Any interruption or cessation of utilities that is not caused by the Landlord shall not be considered a breach of the Landlord's obligations under this Lease and Tenant will still be obligated

MASTER RESIDENTIAL LEASE 11.15.19                                    Initial

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

to make timely Monthly Payments to the Landlord in accordance to the term and conditions contained herein.

(v) **MAINTENANCE**

To the extent required by applicable law, Landlord agrees to: (a) comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety; (b) keep all common areas of the Premises (if any) in a safe and sanitary condition; (c) maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures, and elevators (if any); and d) do whatever is reasonably necessary to put and keep the Premises in a fit and habitable condition to the minimum extent required by applicable law. However, Landlord is not required and does not agree to make any repairs for damage caused by the Tenant's intentional or negligent damage, destruction, defacing, removal, use and/or operation of the Premises, including, but not limited to, any appliances supplied by Landlord or included with the Premises. Landlord shall perform the foregoing repairs to the Premises within a reasonable amount of time after receipt of written notice from Tenant that such repairs are needed. Notwithstanding the foregoing, for any such repairs that Landlord is required to perform hereunder, Tenant agrees to be responsible for arranging for a reputable contractor approved by Landlord to complete such repairs at a time and date that is mutually acceptable to Tenant and such contractor; provided, however, that prior to having any such contractor actually perform such repairs, Tenant shall deliver to Landlord in writing via the customer portal on Landlord's website, for Landlord's approval, such contractor's name, phone number and cost estimate for such repairs. Landlord will be responsible for promptly paying such contractor for such repairs. In no event shall Tenant cause any such repairs to be made without Landlord's approval.

Landlord and Tenant agree that Tenant is required to (a) keep the Premises safe and sanitary and free of vermin and other pests; (b) dispose of all rubbish, garbage, and other waste in a clean, safe, and sanitary manner; (c) keep all plumbing fixtures in the dwelling unit or used by Tenant as clean as their condition permits; (d) use and operate all electrical and plumbing fixtures properly and keep all plumbing free of grease and foreign matter; (e) except to the extent provided by Landlord pursuant to the preceding paragraph, comply with the requirements imposed on residents by all applicable state and local housing, health, and safety codes; (f) personally refrain and forbid any other person who is on the Premises with Tenant's permission from intentionally or negligently destroying, defacing, damaging, or removing any fixture, appliance, or other part of the Premises and repair any damages caused as a result of such actions; (g) maintain in good working order and condition any range, refrigerator, washer, dryer, dishwasher, or other appliances supplied by the Landlord or included with the Premises indicated below in Section (z) "Appliances"; (h) maintain in good working order and condition all smoke detectors and carbon monoxide alarms, including replacement of any batteries, and not to tamper with, remove the batteries from or otherwise disable any such devices; (i) maintain the lawn and landscaping, sidewalks and driveways in a neat and healthy condition consistent with well-maintained comparable residential properties in the neighborhood where the Premises are located; (j) every 30 days change the filters in the heating, ventilating and air conditioning equipment that serves the Premises; (k) keep the gutters and downspouts clear and free of debris; (l) maintain any landscaping sprinkler system; (m) have any fireplace and chimney professionally inspected and cleaned annually; and (n) conduct himself/herself, and require persons in the household or on the Premises with Tenant's consent to conduct themselves, in connection with the Premises so as not to violate state law or municipal ordinances including without limitation those relating to controlled substances. Any fines or penalties (including without limitation state, local and HOA fees) charged as a result of Tenant's violation of this paragraph will be the sole responsibility of Tenant. The Tenant's initials at the end of this page indicate Tenant's explicit understanding of, and intent to comply with this paragraph.

In the event that any damage or loss to Landlord is caused by Tenant, occupants of the Premises or their respective guests or invitees (including contractors), Tenant shall be responsible for immediately reimbursing Landlord for such damage or loss. Unless caused by the Landlord's negligent Act, the Landlord is not liable for and Tenant must pay for: (i) damage to doors, windows or screens; (ii) damage from windows or doors left open; and (iii) damage from wastewater stoppages caused by improper

MASTER RESIDENTIAL LEASE 11.15.19                                          Initial

objects in lines exclusively serving the Premises. At Landlord's discretion, Tenant shall pay for such repairs in advance. Any delay or postponement in demanding payment for such sums shall not waive Landlord's right to demand such payment.

The Tenant is not permitted to undertake major renovations, perform any work requiring a permit, or make any modification to major mechanical or structural components, including without limitation electrical, plumbing, mechanical or foundation (examples include kitchen remodeling, additions to the home, etc.). The Tenant may make minor alterations at their own expense (examples include re-painting, re-landscaping, etc.), so long as these alterations do not require any permits or other similar approvals or impose any liens whatsoever upon the home.

It is the responsibility of the Tenant to maintain all carbon monoxide detection devices, including replacement of any batteries. The Tenant shall not tamper with, remove batteries from, or otherwise disable any carbon monoxide detection devices. The Tenant's initials at the end of this page indicate that all carbon monoxide detection devices in the Premises are in proper working order as of the date of this Lease.

Any request for maintenance must be in writing and submitted through the customer portal. Tenant agrees to not permit any contractors, inspectors, or other such vendors on the Premises without written consent and verification of insurance with Landlord. Tenant is responsible for any and all improvements required to satisfy local compliance unless present and documented at initial move-in or as provided in the State Addendum.

(w) **LEAD WARNING STATEMENT**

Housing built before 1978 may contain lead-based paint. Lead-based paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, the Landlord must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. The Tenant acknowledges receipt of a federally approved pamphlet on lead poisoning prevention.

(x) **RADON GAS DISCLOSURE**

Radon Gas is a naturally occurring radioactive gas that, when it has accumulated in a house or building in significant quantities, may present health risks to persons exposed to it over time.

(y) **PETS**

Tenant is permitted to keep pets on the Premises, subject to the following:

- The Tenant must identify any pet(s) kept on the Premises in the table below, and shall notify the Landlord immediately if there are any changes to that information;
- The Tenant agrees to keep all pets under control at all times and obey all governmental ordinances related to keeping animals;
- The Tenant agrees that all pets shall be kept, maintained and licensed in accordance with the regulations of the Humane Society and the state and local animal welfare and health departments (or any other similar equivalent state or local agency or division) in which the Premises is located;
- The Tenant agrees to be fully responsible for any damage caused to the Premises by any pet(s) and for any and all wear and tear resulting from any pet(s) and agrees to fully compensate the Landlord for any and all such damage and/or additional wear and tear;
- The Tenant shall indemnify and save the Landlord harmless from any and all claims which may be made against the Landlord by reason of permitting the Tenant to keep pets on the Premises;
- The keeping of any pet(s) on the Premises is in the sole discretion of the Landlord and the Landlord reserves the right to require that any pet(s) be removed from the Premises with ten (10) days written notice; and
- The Tenant will be assessed a $300 fee ("Pet Fee") for keeping any pet(s) on Premises, unless such Pet Fee is prohibited under applicable law.



DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

In addition to the foregoing, if the Premises is a condominium unit or subject to HOA or other similar community restrictions, the keeping of pets at the Premises are subject to the rules and regulations of the condominium association, HOA or other similar community organization. For avoidance of doubt, if the applicable condominium association, HOA or other similar community rules and regulations differ from the requirements contained in this Lease, the Premises will be governed by the most restrictive requirements.

| Name of Pet | Type of Animal & Breed (if known) | Approximate Age | Approximate Weight (lbs) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

(z) **APPLIANCES**

The following appliances have been supplied by the Landlord or are included with the Premises: (check all that apply)

[ ] Stove/Oven     [ ] Refrigerator     [ ] Dishwasher     [ ] Microwave     [ ] Washer     [ ] Dryer

[ ] Disposal     [ ] Other_____     [ ] Other_____     [ ] Other_____

The Tenant shall keep all appliances supplied by the Landlord or included with the Premises in good working order and shall promptly repair any faulty appliance at the Tenant's expense. The Tenant agrees that the above appliances are the property of the Landlord and will remain with the Premises at the end of the Lease Term. The Tenant is permitted to upgrade any appliance so long as the new appliance is at equal or greater value to the original appliance. To the extent permitted by law, the Tenant is solely responsible for maintaining and paying for any repairs to the appliances.

(aa) **FURNISHINGS**

The Premises is not furnished.

(bb) **STORAGE & PARKING**

The Tenant agrees not to store any hazardous material in or at the Premises or on the grounds of the Premises. The Tenant may not park or store any vehicle on the grass, yard or any other place not generally intended for parking a vehicle. Vehicles parked on the public street must be in compliance with local laws and regulations (including without limitation any condominium and HOA rules) governing such parking.

(cc) **TAXES, INSURANCE, AND HOA FEES**

Real estate taxes, insurance, and HOA dues will be paid by the Landlord and are not the responsibility of the Tenant. Tenant agrees to submit any and all related correspondence received at the Premises to the Landlord via email to operations@divvyhomes.com within 3 days of receipt.  In jurisdictions where city-related sale and purchase inspection fees apply, Buyer shall be responsible for inspections, associated repairs, and fees.

MASTER RESIDENTIAL LEASE 11.15.19                                     Initial 

(dd)    **FINES**

The Tenant will be responsible for any fine and/or violation that is imposed against the Premises or the Landlord due to, caused by or related to the Tenant's rental of the Premises, including without limitation county or municipality citations, police and fire codes, HOA fines and HOA charges.

(ee)    **EARLY TERMINATION**

Except as a result of the Tenant's acquisition of the Premises as set forth in the Option Addendum, the Tenant may not cancel this Lease. To the extent permitted by law, Tenant may have special statutory rights to terminate this Lease early in certain situations involving family violence, certain sexual offenses, stalking or a military deployment or transfer. Such special statutory rights may be more specifically described in the State Addendum.

(ff)    **MOVING OUT**

If the Tenant does not elect to purchase the Premises per the Option Addendum, the Tenant acknowledges and agrees that this Lease shall terminate at 12:00 P.M. local time on the last day of the Lease Term (or such earlier day as provided in this Lease). It is the Tenant's obligation to have the Premises vacant, cleaned, and ready to return to the Landlord in accordance with this Lease by that time.

The Tenant is responsible for scheduling a walk-through inspection with a Divvy representative 15 days prior to the agreed-upon move out date, which walk-through shall be scheduled on the move-out date or within 30 days after.

The Tenant agrees to return the Premises to the Landlord at the end of the Lease Term in the same condition as it was delivered, normal wear and tear excepted. Any damage to the Premises not caused by the Landlord will be repaired and restored to original condition by the Tenant at the Tenant's sole expense prior to the expiration of the Lease Term.

(gg)    **TENANT'S INSURANCE**

The Landlord recommends that the Tenant obtain renter's insurance to protect the Tenant's personal property and to cover the Tenant's liability for the negligence or misconduct of Tenant, any member of the household or any of Tenant's guests or invitees. The Tenant is responsible for all damage caused to the Premises as a result of the negligence or misconduct of the Tenant, any member of the household, Tenant's guests and invitees, including, but not limited to, fire and glass breakage, and shall be responsible for repair and replacement of any damage caused thereby, including replacement of items that have been damaged beyond repair, regardless of whether the breakage or damage was caused voluntarily, involuntarily, or from vandalism.

Neither party to this Lease shall be liable for non-performance of any obligation under this Lease if such non-performance is caused by a Force Majeure. "Force Majeure" means an unforeseeable cause beyond the control of and without the negligence of the party claiming Force Majeure, including, but not limited to, fire, flood or other severe weather, acts of God, acts of terrorism, and other unforeseeable accidents. In the event that the Premises becomes uninhabitable during the term of the Lease due to Tenant's negligence or misconduct, any member of the household or any of Tenant's guests or invitees's negligence or misconduct, the Tenant is responsible for making alternative living arrangements and will remain liable for Rent under this Lease.

(hh)    **CRIME FREE / NUISANCE FREE REQUIREMENTS**

The Tenant agrees and understands that the Tenant is responsible for the actions of the Tenant, any member of the Tenant's household, and their guests and invitees, and agrees that the Tenant may be evicted for the behavior or violations of the Tenant, any member of the Tenant's household, and their

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

guests and invitees. The Tenant, any member of the Tenant's household, and their guests and invitees shall not use the Premises or any area on or about the Premises, including common areas, for any unlawful purpose and shall comply fully with all applicable federal, state and local laws and ordinances, including, but not limited to, laws prohibiting the use, possession or sale of illegal drugs or drug paraphernalia, as defined by either State or Federal Law. Nor shall the Tenant, any member of the Tenant's household, and their guests and invitees use the Premises in a manner offensive to others. Nor shall the Tenant, any member of the Tenant's household, and their guests and invitees create a nuisance by annoying, disturbing, inconveniencing or interfering with the quiet enjoyment of any other tenants or neighbors. Noise must be limited between the hours of 10pm and 8am and must conform to local noise ordinances. The Tenant agrees to immediately inform the Landlord and the appropriate authorities upon obtaining actual knowledge of any illegal acts on or about the Premises. Violation of any State or Federal statute or County or City ordinance shall be grounds for the Landlord to issue a notice to terminate this Lease, subject to the terms of the Option Addendum and State Addendum. For the avoidance of doubt, to the extent that the provisions of this paragraph are silent on a matter, or differ from or conflict with any federal, state or local law, regulation or ordinance, the Premises will be governed by the most restrictive requirement.

In addition to the above, the Landlord emphasizes a ZERO TOLERANCE stance with regard to illegal drugs and substance abuse. The Tenant agrees that the following acts are non-exclusive examples of behavior that will result in the Landlord having an immediate right to terminate the Lease (subject to the terms of the Option Addendum and State Addendum):

- Any use, storage, manufacture, sale or keeping of illegal drugs on the Premises during the Lease Term.

- Any use of a controlled substance (including alcohol and prescription medications) in a manner that will either:
    - Disturb the peace and quiet of other tenants or neighbors to the Premises; or
    - Endanger the health, safety, or well-being of the Tenant, any family member residing on the Premises, or a guest or invitee.

- Engaging in any illegal gang-related activity on Premises, including without limitation the Tenant or any member of Tenant's household or any of their guests or invitees being a known member of an illegal gang (the term "illegal gang" being used to refer to any group of people involved in organized illegal activity).

(ii)    **LIABILITY**

To the fullest extent permitted by law, the Tenant hereby agrees that the Tenant shall defend, indemnify, and hold harmless the Landlord and its representatives and agents from any and all loss, claim or damage by reason of any accident, injury, or damage/theft to any person or property occurring on or about the Premises, due to fire, water, or other element or natural event, theft, vandalism, or act by the Tenant, or the Tenant's agents, contractors, guests, invitees or another tenant.

The Tenant understands that the Landlord and its legal representatives do not guarantee, warrant, or assure the Tenant's personal security and are limited in their ability to provide protection. The Tenant acknowledges that security devices or measures may fail or be thwarted by criminals or by electrical or mechanical malfunction. Therefore, the Tenant acknowledges that they should not rely upon the presence of such devices or measures and should protect themselves and their property as if these devices or measures did not exist. The Tenant understands that any proactive steps the Landlord has taken are neither a guarantee nor a warrant that there will be no criminal acts or that the Tenant will be free from violent

MASTER RESIDENTIAL LEASE 11.15.19                    Initial 

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

tendencies of third persons. The Tenant has been informed and understands and agrees that personal safety and security are the Tenant's personal responsibility.

Without limiting the foregoing, except to the extent of the gross negligence or willful misconduct of the Landlord, the Landlord and its agents and representatives shall not be liable for (i) any damage to the Tenant's property; or (ii) any injury or damage to property resulting from fire, explosion, falling plaster, steam, gas, electricity, water or rain which may leak from any part of the Premises or from the pipes, appliances, appurtenances or plumbing works therein or from the roof, street or sub-surface or from any other place or resulting from dampness or any other cause whatsoever or from the acts or omissions of other tenants, occupants or other visitors to the Premises or from any other cause whatsoever.

(jj)     **DESTRUCTION OF THE PREMISES**

If the Premises are destroyed or damaged by fire, the elements, or other causes to an extent rendering the same untenantable then this Lease shall cease and terminate as of the date of such destruction, and the Rent shall then be accounted for between the Landlord

and the Tenant up to the time of such damage or destruction of the Premises as being prorated as of that date. In the event the Premises are damaged by fire, windstorm, or other cause beyond the control of the Landlord so as to render the same partially untenantable, but repairable within a reasonable time, then this Lease, at the option of the Landlord, shall remain in full force and effect and the Landlord shall, within a reasonable time, restore the Premises to substantially the same condition the Premises was in prior to said damage, and there shall be an abatement in Rent in proportion to the relationship the damaged portion of the Premises bears to the whole of said Premises.

If the whole of the Premises, or such portion thereof as will make the Premises unusable for the purposes herein leased, is condemned by any legally constituted authority, or conveyed to such authority in lieu of such condemnation, then in either of said events, the Lease Term will end on the date when possession thereof is taken by the condemning authority, and rental will be accounted for between the Landlord and the Tenant as of such date.  In the event any portion of the Premises is taken by condemnation or a conveyance in lieu thereof (other than as set forth in the preceding sentence), at the Landlord's option, the Landlord may (i) terminate this Lease, or (ii) if the Premises may still be used as a single family residence, elect to continue this Lease and reduce the rent in proportion to the portion of the Premises so taken.  In the event of any such taking of all or any portion of the Premises or conveyance in lieu thereof, the Landlord shall be entitled to all compensation which may be paid or made in connection therewith, and the Tenant shall have no claim for the value of the unexpired leasehold, and hereby assigns to the Landlord any right the Tenant may have to participate in any award paid on account of any such taking.

(kk)     **LANDLORD ACCESS**

The Landlord and its agents, employees and contractors shall have the right to enter the Premises during reasonable times for the purposes of, inspecting, making necessary or agreed repairs, alterations, or improvements, or supplying necessary or agreed services with the consent of the Tenant. Unless it is impractical to do so due to emergency, the Landlord shall use commercially reasonable efforts to give the Tenant two (2) days' notice of such intent. The Landlord and its agents, employees and contractors may enter without the consent of the Tenant in case of emergency or abandonment. The Tenant may not unreasonably deny access under any circumstances. Further, Tenant shall also permit properly credentialed state and local officials (including without limitation representatives of the building department or health services) to have access to the Premises, and shall be required to schedule and coordinate access for any local or municipal compliance inspection in a timely manner.

(ll)     **COURT AND ATTORNEY'S FEES**

As provided by law and except as otherwise prexibited, the Landlord shall be entitled to recover to the fullest extent permissible by law its reasonable attorneys' fees and court costs incurred in the event any

MASTER RESIDENTIAL LEASE 11.15.19                                          Initial

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

action, suit or proceeding commenced to enforce the terms of this Lease. This Lease shall be governed by and construed in accordance with the laws of the State in which the Premises is located. It is agreed that venue for any legal action brought to enforce the terms of this Lease shall be in the State Court with jurisdiction over the area in which the Premises is located. The Tenant shall pay all reasonable attorneys' fees arising from any action necessary by the Landlord to enforce any part of this Lease. Nothing in this paragraph shall be construed to require the Landlord to complete and prevail in a legal action for purposes of charging the Tenant for notices or partial legal proceedings lawfully initiated when the breach is subsequently corrected by the Tenant.

(mm)   **NON-WAIVER OF BREACH AND SEVERABILITY**

The failure of the Landlord to insist upon the strict performance of any term of this Lease, or to exercise any option herein conferred in any one or more instances, shall not be construed to be a waiver or relinquishment of any of such term or agreement, but the same shall remain in full force and effect. If any clause or provision of this Lease is illegal, invalid, or unenforceable under present or future laws effective during the Lease Term, then it is the intention of the parties hereto that the remainder of the Lease shall not be effected thereby, and it is also the intention of the parties to this Lease that in lieu of each clause or provision that is illegal, invalid or unenforceable, there be added as a part of this Lease, a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

The Landlord and the Tenant agree that this Lease and any attached Addenda, Rules and Regulations, and/or Special Terms and Conditions accurately represent all terms and agreements between the Landlord and the Tenant regarding the Premises. The Tenant acknowledges the receipt of any disclosures required by the State in which the Premises is located as well as any disclosures required by federal, state and local jurisdictions.

(nn)   **SUBORDINATION / LIENS / SALES**

Subject to the provisions of the State Addendum, the Landlord may mortgage the Premises or grant deeds to secure debt or deeds of trust with respect thereto. The Tenant agrees to execute such reasonable estoppel certificates as may be required by a mortgagee or deed of trust beneficiary stating that the Lease is in full force and effect and certifying the dates to which Rent and other charges have been paid. This Lease is subject and subordinate to any mortgage or deed of trust which is now a lien upon the Premises, as well as to any mortgages, deeds to secure debt or deeds of trust that may hereafter be placed upon the Premises and to any or all advances to be made or amounts owing thereunder, and all renewals, replacements, consolidations and extensions thereof. The Tenant shall execute and deliver at the place that the Tenant usually pays the Rent, within ten (10) days after demand therefor, whatever instruments may be required from time to time by any mortgagee or deed of trust beneficiary for any of the foregoing purposes. If the Landlord sends out an estoppel certificate to the Tenant and the Tenant fails to return the certificate to the Landlord timely, all of the information on that certificate shall be deemed true and correct. Failure to return the estoppel certificate within the time period above shall be grounds for termination of this Lease.

(oo)   **FAIR HOUSING AND DISABILITY ACCOMMODATION**

Landlord shall comply with all applicable fair housing laws including those that govern response to requests by the Tenant or others for reasonable accommodation or modifications.

(pp)   **PREMISES DEEMED UNINHABITABLE**

If the Premises is deemed uninhabitable, under applicable state and local rules and regulations, due to damage beyond reasonable repair, the Tenant will be able to terminate this Lease by written notice to the Landlord. If said damage was due to the negligence of the Tenant, the Tenant shall be liable to the Landlord

13

MASTER RESIDENTIAL LEASE 11.15.19                      Initial 

for all repairs and for the loss of income due to restoring the Premises back to a livable condition in addition to any other losses that can be proved by the Landlord.

(qq)     **NOTICES**

Unless otherwise required by law, in every instance where it shall be necessary or desirable for the Landlord to serve any notice or demand upon the Tenant, it shall be sufficient (1) to deliver or cause to be delivered to the Tenant a written or printed notice or (2) to send a written or printed notice by United States mail, addressed to the Tenant at the Premises, in which event the notice or demand shall be deemed to have been served at the time the copy is mailed, or (3) to leave a written or printed copy thereof with a person 13 years of age or older, at the Premises, or (4) by electronic delivery as set forth below, or (5) in the event no one is in actual possession of the Premises, then by posting the same upon any door leading into the Premises, in which event the notice or demand shall be deemed to have been served at the time the copy is so left or affixed.  All notices required or desired to be sent by the Tenant to the Landlord shall be in writing, shall be signed by the Tenant and shall be given either by (1) electronic delivery, or (2) personal delivery, or (3) by prepaid U.S. certified mail to the Landlord or the Landlord's agent for purposes of receiving notices, if any, identified in this Lease.

The Tenant agrees that all notices to be delivered to the Tenant pursuant to the above paragraph may be delivered by the Landlord to the Tenant electronically to the following e-mail address(es), if provided by Tenant; please include all email addresses that have been used in connection with Tenant's application:

(1)     For ____                          _____:  ___                          _____

                Print Name                          E-mail Address

(2)     For ____                          _____:  ___                          _____

                Print Name                          E-mail Address

The date of sending of the electronic notice will be deemed the date of delivery.  The Tenant is responsible for notifying the Landlord or Landlord's agent, if applicable, of any change in the Tenant's e-mail address. Any change of e-mail address will not be effective until five (5) days after receipt of notice thereof by the Landlord.

The Landlord's address for notice purposes hereof is:

300 Montgomery Street, Floor 12
San Francisco, CA 94104

(rr)     **GENERAL TERMS**

This Lease and its Addenda and Exhibits are the final and entire agreement. No oral agreements or representations have been entered into or made with respect to this Lease. This Lease shall not be modified except in writing signed by both the Landlord and the Tenant. The Tenant expressly represents that he or she is of legal age to contract in the state where the Premises is located. If multiple persons sign this Lease as tenant, each Tenant is jointly and severally liable for each provision of this Lease. Time is of the essence of this Lease. Neither this Lease, the Exhibits, Addenda, nor any memorandum or summary, thereof may be recorded with any county without the express written consent of the Landlord. If any date specified in this Agreement for the performance of an obligation, including, without limitation, the Payment of Rent, falls on a day other than a business day, then this Lease shall be automatically revised so that such date falls on the next occurring business day.

The Tenant acknowledges that the Landlord has provided the Tenant with applicable, if any,

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

Homeowners Association ("HOA") and condominium policies, declarations, or bylaws. The Tenant's failure to review any applicable HOA and condominium policies, bylaws, declarations or covenants shall not relieve the Tenant from complying with the same.

(ss)  **SEPARABILITY.**

If any clause or provision of this Lease is illegal, invalid, or unenforceable under present or future laws, then the remainder of this Lease shall not be affected thereby and in lieu of such clause or provision, there shall be added as a part of this Lease a clause or provision as similar in terms to such illegal, invalid, or unenforceable clause or provision as may be possible and be legal, valid, and enforceable.

(tt)  **MISSTATEMENTS ON APPLICATION**

The Tenant has completed an application in connection with executing this Lease. Payments for said application and screening and credit reports are non-refundable. The Tenant warrants the accuracy of all information contained in the rental application. The Landlord has relied upon the statements set forth in said application and results of said screening and credit report in deciding to rent the Premises to the Tenant. The Tenant authorizes the Landlord to obtain supplementary credit reports at any time during the Tenant's occupancy of the Premises at the Landlord's expense. It is agreed that should the Landlord subsequently discover any misstatements of fact in the Tenant's application, such misstatements shall be deemed a material and incurable breach of this Lease and shall entitle the Landlord to terminate this Lease or Tenant's right to possession of the Premises.

The Landlord and the Tenant are each advised to seek independent legal advice on matters arising from use of this form.

(uu)  **EXEMPTION**

To the extent permitted by law, the Tenant hereby waives and renounces all homestead or exemption rights which the Tenant may have under or by virtue of the Constitution and Laws of the United States, or any other State as against any debt the Tenant may owe the Landlord under this Lease, and hereby transfers, conveys, and assigns to the Landlord all homestead or exemption rights which may be allowed or set apart to the Tenant, including such as may be set apart in any bankruptcy proceeding, to pay any debt owing by the Tenant to the Landlord hereunder.

(vv)  **NO ESTATE IN LAND**

This Lease creates the relationship of landlord and tenant between the Landlord and the Tenant.  Subject to the provisions of the Option Addendum, Tenant has only a leasehold estate with respect to the Premises which is not subject to levy and use, and is not assignable by the Tenant except with the Landlord's prior written consent, which may be withheld in Landlord's sole discretion.

(ww)  **STATUTORY NOTIFICATION OF PROPENSITY TOWARDS FLOODING**

PRIOR TO THE TENANT'S SIGNATURE TO THIS LEASE, the Tenant acknowledges the Landlord's notification of the propensity of the Premises towards flooding <u>if</u> flooding has damaged any portion of the living space covered by the Lease or attachments thereto to which the Tenant has sole and exclusive use under the Lease at least three (3) times during the five (5) year period immediately preceding the date of the Lease.

Any owner failing to give such notice shall be liable in tort to the Tenant and the Tenant's family residing or a resident relative of the Tenant which is proximately caused by flooding which occurs during the term of the Lease.  <u>For purposes of the Lease, flooding is defined as the inundation of a portion of the living space covered by the Lease which was caused by an increased water level in an established</u>

MASTER RESIDENTIAL LEASE 11.15.19                    Initial 

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

water source such as a river, stream, or drainage ditch or as a ponding of water at or near the point where heavy or excessive rain fell.

THE PROPERTY DOES/DOES NOT HAVE A PROPENSITY TOWARDS FLOODING AS DEFINED HEREIN.

EXHIBITS

Exhibit A: Legal Description of the Premises
Exhibit B: Authorization for Preauthorized Payments
Exhibit C: Lead-Based Paint Disclosure
Exhibit D: Home Inspection Report
Addendum to Lease Agreement – Option to Purchase
Addendum to Lease Agreement – State-Specific Provisions

**SIGNATURES**

**By signing this Lease, the Tenant certifies that he/she has read, understood and agrees to comply with all of the terms, conditions, rules and regulations of this Lease including any addendums and that he/she has received copies of all pertinent addendums. In witness whereof, the parties have executed this Lease the day and year first written above.**

**Tenant:**

_____     Grady Barton_____     8/4/2022_____
SIGNATURE                                              PRINT NAME                              DATE

_____     _____     _____
SIGNATURE                                              PRINT NAME                              DATE

**Landlord:**

_____     Adena Hefets_____     _____
SIGNATURE                                              PRINT NAME                              DATE

MASTER RESIDENTIAL LEASE 11.15.19                                        Initial 

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

**Exhibit A: LEGAL DESCRIPTION OF THE PREMISES**

The land referred to herein below is situated in the City of St Clair, County of Franklin County, State of MO and is described as follows:

A PARCEL OF LAND LOCATED IN THE STATE OF MISSOURI, COUNTY OF FRANKLIN, WITH A SITUS ADDRESS OF 111 WRENWOOD DR, SAINT CLAIR, MO 63077-2127 CURRENTLY OWNED BY GREEN ROXIE MAE HAVING A TAX ASSESSOR NUMBER OF 29-1-020-4-001-035000 AND BEING THE SAME PROPERTY MORE FULLY DESCRIBED AS LOT:21&22 BLOCK 19 LAKE ST CLAIR 16-25 BLOCK: 19 LOT: 21 AND DESCRIBED IN DOCUMENT NUMBER 18697 DATED 20060817 AND RECORDED 20060818.

MASTER RESIDENTIAL LEASE 11.15.19                                    Initial 

**Exhibit B: Authorization for Preauthorized Payments**

I/We authorize Divvy Homes, Inc. to initiate debit entries to my/our account at the Financial Institution (identified below), for the purpose of accomplishing the following preauthorized payments:

| | |
|---|---|
| Name of Tenant | Grady Barton |
| Amount | See Lease Agreement |
| Frequency | 1st of Every Month |
| Effective Date | Lease Start Date |
| Financial INSTITUTION | Pnc |
| Telephone | 1800pncbank |
| Routing Number | █████████ |
| Account Number (please provide a voided check) | █████████ |

My/Our account will remain subject to its individual terms and conditions, which are not modified by this authorization.

I/We acknowledge that the origination of these transactions must comply with the provisions of U.S. law.

I/We understand that this authorization will remain in full force and effect until Divvy Homes, Inc. has received written notification from me (or either of us) of its termination in such time and in such manner as to afford Divvy Homes, Inc. and its bank a reasonable time to act on it.

**Tenant:**

| | | |
|---|---|---|
| SIGNATURE | Grady Barton | 8/4/2022 |
| | PRINT NAME | DATE |

| | | |
|---|---|---|
| SIGNATURE | PRINT NAME | DATE |

MASTER RESIDENTIAL LEASE 11.15.19                    Initial 

**Exhibit C: Lead-Based Paint Disclosure**

Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards Lead Warning Statement Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Tenants must also receive a federally approved pamphlet on lead poisoning prevention.

**Landlord's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below)
    i. _____ Known lead-based paint and/or lead-based paint hazards are present in the housing.
    _____
    ii. \_\_\_ Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
(b) Records and reports available to the Landlord (check (i) or (ii) below)
    i. \_\_\_ Landlord has provided the Tenant with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).
    _____
    ii. \_\_\_ Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Tenant's Acknowledgment (initial)**

(c) _____ Tenant has received copies of all information listed above.

(d) _____ Tenant has received the pamphlet Protect Your Family from Lead in Your Home.

(e) _____ Agent has informed the Landlord of the Landlord's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

Certification of Accuracy: The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

**Tenant:**

| | | |
|---|---|---|
| SIGNATURE | Grady Barton<br>PRINT NAME | 8/4/2022<br>DATE |
| SIGNATURE | PRINT NAME | DATE |
| SIGNATURE | Adena Hefets<br>PRINT NAME | DATE |

**Landlord:**

MASTER RESIDENTIAL LEASE 11.15.19      Initial

**Exhibit D**
　　　　Inspection Report

Initial 

# Addendum To Lease Agreement
# State Specific Provisions

# (MISSOURI)

Initial 

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

**ADDENDUM TO LEASE AGREEMENT – STATE SPECIFIC PROVISIONS (MISSOURI)**

This Addendum to Lease Agreement – State Specific Provisions (Missouri) (this "**Addendum**"), dated as of 08/10/2022, is entered into by and between Bay Street Homes, LLC ("**Landlord**"), and Grady Barton ("**Tenant**"), is made part of that certain Residential Lease Agreement dated 08/10/2022 (the "**Lease**") between Landlord and Tenant of that certain residential single family home, and related real property commonly known as 111 Wrenwood Dr, City of St Clair, County of Franklin County, MO (the "**Real Property**").  The Real Property is legally described in <u>Exhibit A</u> attached hereto.  Capitalized terms used in this Addendum and not otherwise defined shall have the meaning given them in the Lease. All of the provisions of the Lease are hereby incorporated herein by reference and are hereby ratified, adopted, agreed to and affirmed by Landlord and Tenant. In the event of any inconsistency between the printed form of Lease and this Addendum, the terms of this Addendum shall control.

WHEREAS Landlord is the owner of the Real Property and, concurrently with the execution of this Addendum, Landlord and Tenant are entering into the Lease in an arm's length lease transaction for a term of approximately thirty-six (36) months (the "**Lease Term**");

WHEREAS Landlord and Tenant wish to modify and supplement the terms and conditions of the Lease as set forth herein;

**W I T N E S S E T H:**

Now, therefore, in consideration of the covenants herein contained on the part of Landlord and Tenant to be observed and performed, Landlord and Tenant agree as follows:

1.      <u>Security Deposit</u>. The Landlord and Tenant acknowledge and agree that the Base Option Consideration Amount is not intended to be construed as a "Security Deposit" as that term is defined by Missouri Law, and each party does hereby disclaim and waive any and all obligation, rights or restrictions related thereto, including, but not limited to, the Landlord's obligation to pay interest on the Base Option Consideration Amount.

2.  <u>Early Termination by Military Personnel</u>

(a)      As used herein, a "servicemember" is an active service duty member of te regular or reserve component of the United States armed forces, the United States Coast Guard, the Missouri National Guard, or the Missouri Air National Guard on ordered federal duty for a period of 90 days or longer.

(b)      If the Tenant is a service member, the Tenant may terminate this Lease by providing the Landlord with a written notice of termination to be effective on the date stated in the notice that is at least 15 days after Landlord's receipt of the notice if any of the following criteria are met:

(i) The Tenant is required, pursuant to a permanent change of station orders, to move 25 miles or more from the Premises;

(ii) The Tenant is released from active duty or state active duty after having leased the Premises while on active duty status and the Premises is 25 miles or more from the Tenant's home of record prior to entering active duty;

(iii) The Tenant receives military orders requiring him or her to move into government quarters;

Addendum – MO 11.15.19                                                                                 Initial 

(iv) The Tenant becomes eligible to live in government quarters and the failure to move into government quarters will result in a forfeiture of the Tenant's basic allowance for housing;

(v) The Tenant receives temporary duty orders, temporary change of station orders, or state active duty orders to an area 25 miles or more from the location of the Premises, provided such orders are for a period exceeding 90 days; or

(vi) Prior to taking possession of the Premises, the Tenant receives a change of orders to an area that is 25 miles or more from the location of the Premises.

(c) The notice to the Landlord pursuant to subsection (b) above shall be accompanied by either a copy of the official military orders or a written verification signed by Tenant's commanding officer.

(d) In the event Tenant is a service member and Tenant dies during active duty, an adult member of Tenant's immediate family may terminate the Lease by providing the Landlord with a written notice of termination to be effective on the date stated in the notice that is at least 30 days after the Landlord's receipt of the notice. The notice to the Landlord must be accompanied by either a copy of official military orders showing Tenant was on active duty or a written verification signed by Tenant's commanding officer and a copy of Tenant's death certificate.

(e) Upon termination of a Lease pursuant to subsection (b) or subsection (d) above, Tenant shall be liable for the rent due under the Lease prorated to the effective date of the termination payable at such time as would have otherwise been required by the terms of this Lease. Tenant shall not be liable for any other rent or damages due to the early termination of the Lease as provided in subsection (b) or subsection (d) above. Notwithstanding any provision of law to the contrary, if a Tenant terminates this Lease pursuant to subsection (b) or subsection (d) above 14 or more days prior to occupancy of the Premises, no damages or penalties of any kind will be assessable.

3. <u>Tenant Abandonment</u>. If the Tenant is deemed to have abandoned the Premise according to RSMO §441.065, the Landlord may consider any property left on the premise to be abandoned any may dispose of the same in any manner allowed by law.

4. <u>Recordation</u>. Neither this Addendum nor any other memorandum or short form thereof shall be recorded by the Tenant without the express written consent of the Landlord.

5. <u>Entire Agreement</u>. The Lease and this Addendum contain all of the agreements and representations of the parties hereto and supersedes all other discussions, understandings or agreements relating to Tenant's rights of occupancy of the Real Property. All prior discussions, understandings and agreements are merged into the Lease and this Addendum, which alone fully and completely expresses the agreements and understandings of the parties hereto. The Lease and this Agreement may be amended, superseded, extended or modified only by an instrument in writing referring hereto signed by both parties. The parties acknowledge and agree that each party has been given the opportunity to consult with such party's own, independent counsel, and such other professional advisors as such party has deemed appropriate, relating to any and all matters contemplated under the Lease and this Addendum and any rule of construction to the effect that ambiguities are to be resolved against the drafting parties shall not apply in the interpretation of the Lease and this Addendum, or any portions hereof, or any amendments hereto.

6. <u>Counterparts</u>: The Lease and this Addendum may be signed in counterparts, which counterparts taken together shall be deemed to be a duly executed contract between the parties. Each counterpart may be delivered by facsimile or e-mail transmission. The signature page of any counterpart may be detached therefrom without impairing the legal effect of the signature(s) thereon provided such signature page is attached to any other counterpart identical thereto. If multiple persons sign this Addendum as Tenant, each Tenant is jointly and severally bound by each provision of this Addendum and the Lease.



DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

7.      <u>Applicable Law</u>.  This Lease and this Addendum shall be governed by and construed in accordance with the laws of the State of Missouri, except for any choice-of-law principles which provide for the application of the laws of another jurisdiction.

8.      <u>Severability</u>.  In case any one or more of the provision contained in this Addendum should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby, but this Addendum shall be reformed and construed and enforced to the maximum extent permitted by applicable law.

9.      <u>Time of Essence</u>.  All times provided for in this Addendum for the performance of any act will be strictly construed, time being of the essence.

[Signatures on Next Page]

Initial 

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

**IN WITNESS WHEREOF**, Landlord and Tenant have executed this Addendum as of the day and year first written above.

**Tenant:**

| | | |
|---|---|---|
| SIGNATURE | Grady Barton | 8/4/2022 |
| | PRINT NAME | DATE |

| | | |
|---|---|---|
| SIGNATURE | PRINT NAME | DATE |

**Landlord:**

| | | |
|---|---|---|
| SIGNATURE | Adena Hefets | DATE |
| | PRINT NAME | |

# Addendum To Lease Agreement - Option To Purchase (All States)

Tenant Initial

## ADDENDUM TO LEASE AGREEMENT - OPTION TO PURCHASE

This Addendum to Lease Agreement – Option to Purchase (this "**Addendum**"), dated as of 08/10/2022, is entered into by and between Bay Street Homes, LLC ("**Landlord**"), and Grady Barton ("**Tenant**"), is made part of that certain Residential Lease Agreement dated 08/10/2022 (the "**Lease**") between Landlord and Tenant of that certain residential single family home, and related real property commonly known as 111 Wrenwood Dr (the "**Real Property**" or "**Property**"). The Real Property is legally described in Exhibit A attached hereto. Capitalized terms used in this Addendum and not otherwise defined shall have the meaning given the term in the Lease, and in the event of any inconsistency between the printed form of Lease and this Addendum, the terms of this Addendum shall control.

WHEREAS Landlord is the owner of the Real Property and, concurrently with the execution of this Addendum, Landlord and Tenant are entering into the Lease in an arm's length lease transaction for a term of approximately thirty-six (36) months (the "**Lease Term**");

WHEREAS Tenant has expressed an interest in obtaining the right to purchase the Real Property during the Lease Term (as hereinafter defined, the "**Option to Purchase**") for a purchase price that the parties have determined evidences the anticipated fair market value of the Real Property at the end of the Lease Term (as hereinafter defined, the "**Purchase Price**"), and on such other terms as are provided in this Addendum;

WHEREAS, in consideration of the grant of the Option to Purchase, Tenant is to make an initial payment to Landlord, and is obligated to make the Total Option Payment (as defined herein) over the Lease Term, each in consideration of the continuing commitment of Landlord to sell the Real Property to Tenant for the Purchase Price at any time during the Lease Term, subject to and on the terms and conditions of this Addendum;

WHEREAS Landlord has acquired the Real Property, as an investment, following consultation with Tenant, including the consideration by Landlord of whether Tenant's assets and credit history would enable Tenant to qualify for market based purchase money financing to fund the difference between the Total Option Payments and the Purchase Price, and Tenant acknowledges the benefit to Tenant of this aspect of the investment by Landlord in the Real Property;

WHEREAS, Landlord and Tenant are entering into the Lease and the Option to Purchase contained herein in an arm's length transaction, without any reliance on Tenant's exercise of the Option to Purchase and without any inducement to or obligation of Tenant to exercise the Option to Purchase the Real Property, understanding that the rental payments under the Lease and the payments contemplated by this Addendum do not return to Landlord the reasonably equivalent value of the Real Property, and understanding that Landlord is acquiring the Real Property and is prepared to own the Real Property even if Tenant does not exercise the Option to Purchase, with no guaranteed exit or return on investment by Landlord; and

WHEREAS, for Real Property located in the State of Texas, Landlord and Tenant intend with this Addendum and the Lease to enter into a transaction involving an option to purchase real property that includes or is combined or executed congruently with a residential lease agreement, together with a lease in accordance with Section 5.062(a)(2) of the Texas Property Code.

## W I T N E S S E T H:

Now, therefore, in consideration of the covenants herein contained on the part of Landlord and Tenant to be observed and performed, Landlord and Tenant agree as follows:

1.    Maintenance of the Real Property.

    a.    The parties agree that the applicable terms and provisions of the Lease shall govern the duties and obligations of the parties to maintain and repair the Real Property.

    b.    Notwithstanding anything to the contrary in the Lease, Tenant shall not make any improvements, additions or alterations to the Real Property or the improvements thereon, other than cosmetic enhancements, without the prior written approval of Landlord.

2

Option Addendum 11.15.19                                    Tenant Initia

2.      Grant of Option.

        a.      Landlord hereby grants to Tenant the option to purchase the Property (the "**Option to Purchase**") on the terms and conditions contained herein.

        b.      The "**Property**" includes (i) the Real Property, (ii) all right, title and interest of Landlord in and to all furniture, furnishings, fixtures, equipment, machinery and other tangible personal property located on, or situated in the improvements located on, the Real Property; and (iii) all right, title and interest of Landlord in and to any easements, hereditaments and rights appurtenant to the Real Property.

3.      Option Exercise.

        a.      Tenant may exercise the Option to Purchase only if Tenant is not then in default (following written notice and expiration of any applicable cure period) under the Lease by delivering written notice of its election to purchase the Property (the "**Option Exercise Notice**") at any time during the Lease Term, but in no event later than ninety (90) days prior to the end of the Lease Term.  For avoidance of doubt, Tenant must not be in default under the Lease (including without limitation being current on all payment obligations and there is no pending eviction or dispossessory proceedings) in order to exercise the Option to Purchase.

        b.      Upon timely delivery of the Option Exercise Notice, Landlord shall be bound to sell and Tenant shall be obligated to purchase the Property, upon the terms and conditions contained in this Addendum, and the Lease Term shall be extended (subject to all of the terms and conditions thereof, including without limitation all payment obligations through the Closing Date. Any refund due to the Tenant for excess payments will be credited to Tenant within thirty (30) days following the Closing Date.

        c.      If Tenant does not timely deliver an Option Exercise Notice (either due to a default under the Lease not timely cured, or because of some other failure to timely deliver an Option Exercise Notice), Tenant's Option to Purchase shall lapse and Landlord shall have no obligation to sell the Property to Tenant under the Lease, as amended by this Addendum.

4.      Purchase Price.  The purchase price for the Property (the "Purchase Price") shall be as follows:

        a. If an Option Exercise Notice is received by Landlord on or before the last day of the sixteenth (16th) calendar month of the Lease Term and Tenant's purchase of the Property is consummated and fully closed by the last day of the seventeenth (17th) calendar month of the Lease Term, then: one hundred ninety-eight thousand, one hundred forty-five Dollars ($198,145), all cash; and

        b.      If (i) an Option Exercise Notice is received by Landlord after the last day of the sixteenth (16th) calendar month of the Lease Term (but in no event later than the last day of the thirty-fifth (35th) calendar month of the Lease Term) or (ii) an Option Exercise Notice is received by Landlord on or before the last day of the sixteenth (16th) calendar month of the Lease Term but Tenant's purchase of the Property is not consummated and fully closed by the last day of the seventeenth (17th) calendar month of the Lease Term for any reason, then: two hundred six thousand, two hundred ninety Dollars ($206,290), all cash.

5.      Option Consideration.

        a.      In consideration for Landlord's granting the Option to Purchase, Tenant shall pay the following as "**Option Consideration**":

        i.      Concurrently with the execution of this Addendum, Tenant shall pay the sum of three thousand, eight hundred ($3,800) (the "**Option Down Payment**").  Landlord acknowledges that it has received an earnest money deposit of $500 on account of the Option Down Payment and will credit such amount towards the amount owing from Tenant to Landlord for the Option Down Payment.

Option Addendum 11.15.19                                              Tenant Initia

ii.     Each month during the Lease Term through the date of delivery of an Option to Exercise Notice, together with the payment of monthly rent, Tenant shall pay, as additional consideration for the Option to Purchase, the amount, per month, shown on <u>Schedule 1</u> attached to this Addendum, ( each a "Monthly Option Payment" and, in the aggregate, the "**Monthly Option Payments**").  The "**Total Option Payments**" means, as of any date of determination, the sum of (i) the Option Down Payment; and (ii) the Monthly Option Payments paid in full as of such date.  Subject to the terms of the Lease and this Addendum, when fully paid the Total Option Payments are intended to accrue to 5.0% of the Purchase Price as of the end of the Lease Term.

b.     Except as provided in Paragraph 5(c) below, subject to (i) the Tenant's ability to obtain financing for the purchase of the Property, and (ii) full compliance with the terms and conditions contained in the Lease and this Addendum, the Total Option Payments shall be credited to the Purchase Price (in an amount equal to the Tenant's then-current accumulated option percentage, as calculated by Landlord, multiplied by the Purchase Price) and eligible lender closing costs at Closing. For the avoidance of doubt, the Total Option Payments are deemed fully earned by Landlord upon payment thereof in consideration of the grant of the Option to Purchase.

c.     Notwithstanding anything to the contrary in this Addendum, in the event of a default by Tenant under the Lease (as amended by this Addendum) that is not cured within any applicable cure period (a "**Default**"), Tenant shall have no right to exercise the Option to Purchase, and any Option Exercise Notice shall, at the election of the Landlord in its sole discretion, be deemed void and no effect. If the Lease is terminated due to a Default by Tenant, then the Total Option Payments will be distributed to the Tenant within forty-five (45) days of the actual move out date, provided, however, that the Surrender Fee, the Shared Loss Deduction, any delinquent rent payments, and costs related to the Tenant departure or removal from the Premises, including without limitation costs related to eviction proceedings or Landlord's repossession of the Premises, costs to repair damages to the Premises and any outstanding fees or fines relating to the Premises and incurred during the term of the Lease, will, to extent permitted by law, be directly deducted from any amount to be refunded to Tenant before payment is made to Tenant. For the avoidance of doubt, a Tenant Default under Section (j)(iii) of the Lease, in the context of which Tenant vacates the Property after the 15th day of a calendar month, shall entitle the Landlord to deduct an additional month of rent from the Total Option Payments. Notwithstanding anything to the contrary contained in this Addendum, Tenant shall not be required to forfeit all or any portion of the Total Option Payment as a result of making a late payment. Landlord and Tenant acknowledge that any right of Landlord to retain a portion of the Total Option Payments is a result of a Tenant's Default which has not been cured. Upon a Default by the Tenant, the Landlord may, at its sole discretion, obtain a "broker's price opinion" or appraisal from a reputable provider, which shall establish an updated value for the Premises ("Updated Value"). If the Updated Value is less than the actual acquisition price paid by Divvy for the purchase of the Premises ("Acquisition Price"), the Landlord is entitled to deduct the difference between the Updated Value and the Acquisition Price multiplied by the Tenant's then-current accumulated option percentage, as calculated by Landlord (such calculation hereinafter referred to as the "**Shared Loss Deduction**").   The "**Surrender Fee**" is equal to $3,800.

d.     If, for any reason (other than a Default), Tenant fails to deliver an Option Exercise Notice or Tenant, after delivery of an Option Exercise Notice, fails to timely effect the related Option to Purchase (a "**Failure to Exercise**"), and allows the Lease to terminate in accordance with its terms, then Tenant shall be entitled to a refund of the Total Option Payments, less (i) the Surrender Fee, (ii) any applicable Shared Loss Deduction and (iii) to the extent permitted by law, any outstanding payment obligations under the Lease and costs related to the Tenant's departure or removal from the Premises (including without limitation costs related to Landlord's repossession of the Premises, costs to repair damages to the Premises and any outstanding fees or fines relating to the Premises and incurred during the tenor of the Lease) within forty-five (45) days of the termination of the Lease.

THE LANDLORD AND THE TENANT ACKNOWLEDGE AND AGREE THAT THE TOTAL OPTION PAYMENTS ARE NOT INTENDED TO BE CONSTRUED AS A "SECURITY DEPOSIT" AS THAT TERM IS DEFINED BY STATE LAW, AND, TO THE EXTENT PERMITTED BY LAW, EACH PARTY DOES HEREBY DISCLAIM AND WAIVE ANY AND ALL OBLIGATIONS, RIGHTS, OR RESTRICTIONS RELATED THERETO, INCLUDING, BUT NOT LIMITED TO, THE LANDLORD'S OBLIGATION TO PAY INTEREST ON SUCH TOTAL OPTION PAYMENTS.

6.     <u>Closing</u>.

Option Addendum 11.15.19                                          Tenant Initia

a.      Tenant's purchase of the Property pursuant to this Addendum shall close no earlier than the first business day that is at least thirty (30) days following the delivery of a valid and effective Option Exercise Notice (the "**Closing Date**") unless otherwise agreed by Landlord.

b.      The sale of the Property is on an "AS IS, WHERE IS" basis, without any representations or warranty as to any physical conditions (in consideration of Tenant's previous occupancy of the Real Property under the Lease). THE TENANT AGREES THAT THE LANDLORD MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AS TO FITNESS, MERCHANTABILITY, USE OR CONDITION OF THE PROPERTY.

c.      The purchase and sale of the Property shall be pursuant to a purchase agreement substantially in the form attached hereto as Exhibit C.

d.      Tenant is solely responsible for arranging for the financing the Purchase Price of the Property (other than with respect to any Total Option Payments available), including any application fee and closing or upfront costs (e.g. points) associated with such financing.

e.      WAIVER OF WALK THROUGH INSPECTION: Given that Tenant currently occupies the Property as its primary residence pursuant to the terms of the Lease, Tenant hereby waives its right to walk through and inspect the Property prior to the Closing Date. Tenant will execute the FINAL WALKTHROUGH WAIVER attached hereto.

f.      Landlord shall convey the Property subject to the following:

i.      All liens, encumbrances, easements other matters of record as of the date of this Addendum in in the official real property records of Franklin County County, MO, including those certain exceptions to title identified on Exhibit B hereto.

ii.      Liens for taxes and general or special assessments on real property not delinquent.

iii.      Matters not of record, including such matters as would be revealed by an accurate survey of the Real Property.

iv.      All zoning and land use laws, statutes, rules and regulations. For the avoidance of doubt, Tenant shall be solely responsible for arranging and paying for any inspection or repair requirement imposed by state or local laws or regulations, or by lender policies (including without limitation a "point-of-sale" inspection) as a result of the exercise of the Option to Purchase.

v.      Any exceptions caused by the Tenant, its agents, representatives or employees

All of the foregoing are referred to herein as the "**Approved Exceptions**."

g.      The sale of the Property shall be consummated through an escrow opened with a reputable title company that offers escrow services and designated by Landlord in its sole discretion, and in accordance with any state and local requirements ("**Escrow Holder**").  At least one (1) business day prior to the scheduling consummation of the sale of the Property (the "**Closing**"), the parties shall deliver to and deposit with Escrow Holder the following:

i.      Landlord shall execute for delivery to Tenant a limited warranty deed in recordable form conveying fee title to the Real Property, subject only to Approved Exceptions;

ii.      Landlord shall execute for delivery to Tenant a bill of sale, without warranties in a form otherwise reasonably acceptable to Tenant, of all personal property.

iii.      Landlord shall execute for delivery to Tenant a Transferor's Certification of Non-Foreign Status, any State or local tax certification forms as may be required to effect the Closing

        iv.      If the Property is located in the State of Georgia, Landlord shall execute for delivery to Tenant a certificate and affidavit that the Landlord is (or is deemed to be) a resident of the State of Georgia as defined in O.C.G.A. § 48-7-128 or, at Landlord's election, an affidavit of gain as contemplated by O.C.G.A. §48-7-128.

        v.      Tenant shall deliver to Escrow Holder funds sufficient to pay the Purchase Price and Closing costs in accordance with this Addendum.

        h.      Closing costs for escrow, title insurance and recording fees and charges shall be allocated to Landlord, as a seller, and Tenant, as a buyer, in accordance with local custom and practice as determined by the Escrow Holder, and the parties shall execute a closing statement in a customary form prepared by Escrow Holder.

        7.      <u>Tax Deferred Exchange</u>.  Landlord may sell the Property as an exchange for other like kind property held for investment pursuant to Section 1031 of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations thereunder.  Tenant shall reasonably cooperate with Landlord in consummating the transfer of the Property in an exchange transaction pursuant to a written exchange agreement and related documents entered into by Landlord and a qualified intermediary, which documents and intermediary are mutually acceptable to Landlord and Tenant and which shall be executed and delivered on or before the Closing Date.  Landlord shall be responsible for all costs and expenses related to the Section 1031 exchange.  Tenant shall not be required to acquire title to any other property in connection with the exchange.  Any assignment of the rights or obligations of a party hereunder to a qualified intermediary to effectuate the exchange shall not relieve, release or absolve such party of its obligations of Landlord to Tenant under this Addendum.  If necessary to effect the exchange, Landlord, upon five (5) business days prior written notice to Tenant and Escrow Holder may delay the Closing, one time, for up to fifteen (15) business days, in which event the Lease shall remain in effect (or be extended, as applicable) on the same terms and conditions.

        8.      <u>Proration of Costs and Income</u>.  Real property taxes and assessments, rent and other charges for services provided to the Real Property that are reimbursed to Landlord under the Lease shall be prorated as of the Closing; provided, however, no insurance premiums shall be prorated.  Landlord shall cooperate with Tenant in transferring all utility accounts relating to the real Property to Tenant as of the Closing Date.  Tenant shall arrange for its own insurance of the Real Property effective as of the Closing Date.

        9.      <u>Destruction or Condemnation</u>.  In the event of a casualty or condemnation of all or a material portion of the Real Property that entitles either party to terminate the Lease, if the Lease is terminated, the Option to Purchase shall terminate.  Subject to the terms of Paragraph 5, none of the Total Option Consideration is refundable to Tenant in the event of a casualty or condemnation that results in a termination of the Lease.

        10.      <u>Notices</u>.  Any notice required, permitted or appropriate hereunder shall be served upon the respective parties as provided in the Lease.

        11.      <u>Currency.</u> References herein to "Dollars" or "$" shall mean the legal tender of the United States of America.

        12.      <u>Recordation</u>.  Neither this Addendum nor any other memorandum or short form thereof shall be recorded by the Tenant without the express written consent of the Landlord.

        13.      <u>Seller Disclosures</u>.  Nothing in this Addendum shall limit or release Landlord from making any and all disclosures to Tenant required by State and local law in connection with the sale of residential real property.  Landlord shall deliver any and all statutorily required disclosure statements to Tenant following any delivery of the Option Exercise Notice, and, to the extent not inconsistent with the terms of this Addendum, Tenant shall have all statutory rights applicable to a sale of residential property under applicable law.

        14.      <u>Entire Agreement</u>.  The Lease and this Addendum contain all of the agreements and representations of the parties hereto and supersedes all other discussions, understandings or agreements relating to Tenant's rights of occupancy of the Real Property, and the right granted to Tenant to purchase the Property.  All prior discussions, understandings and agreements are merged into the Lease and this Addendum, which alone fully and completely expresses the agreements and understandings of the parties hereto.  The Lease and this Agreement may be amended, superseded, extended or modified

6

only by an instrument in writing referring hereto signed by both parties. The parties acknowledge and agree that each party has been given the opportunity to consult with such party's own, independent counsel, and such other professional advisors as such party has deemed appropriate, relating to any and all matters contemplated under the Lease and this Addendum and any rule of construction to the effect that ambiguities are to be resolved against the drafting parties shall not apply in the interpretation of the Lease and this Addendum, or any portions hereof, or any amendments hereto.

15.     <u>Counterparts</u>:  The Lease and this Addendum may be signed in counterparts, which counterparts taken together shall be deemed to be a duly executed contract between the parties. Each counterpart may be delivered by facsimile or e-mail transmission. The signature page of any counterpart may be detached therefrom without impairing the legal effect of the signature(s) thereon provided such signature page is attached to any other counterpart identical thereto. If multiple persons sign this Agreement as Tenant, each Tenant is jointly and severally bound by each provision of this Agreement.

16.     <u>Applicable Law.</u>  This Agreement shall be governed by and construed in accordance with the laws of the State in which the Property is located in, except for any choice-of-law principles which provide for the application of the laws of another jurisdiction.

17.     If the Real Property is located in the State of Ohio, the following Disclaimer will be incorporated into this Addendum herein:

Disclaimer of Land Installment Contract Act. LANDLORD AND TENANT ACKNOWLEDGE AND AGREE THAT THIS ADDENDUM (TOGETHER WITH THE LEASE) ARE NOT INTENDED TO BE CONSTRUED AS A "LAND INSTALLMENT CONTRACT" AS THAT TERM IS DEFINED BY OHIO LAW, AND EACH PARTY DOES HEREBY DISCLAIM AND WAIVE ANY AND ALL OBLIGATIONS, RIGHTS, OR RESTRICTIONS RELATED THERETO.

18.     <u>Severability</u>.  In case any one or more of the provisions contained in this Addendum should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby, but this Addendum shall be reformed and construed and enforced to the maximum extent permitted by applicable law.

19.     <u>Time of Essence</u>.  All times provided for in this Addendum for the performance of any act will be strictly construed, time being of the essence.

[Signatures on Next Page]

Option Addendum 11.15.19                                          Tenant Initia 

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

**IN WITNESS WHEREOF**, Landlord and Tenant have executed this Addendum as of the day and year first written above.

**Tenant:**

| | | |
|---|---|---|
| SIGNATURE | Grady Barton | 8/4/2022 |
| | PRINT NAME | DATE |

| | | |
|---|---|---|
| SIGNATURE | PRINT NAME | DATE |

**Landlord:**

| | | |
|---|---|---|
| SIGNATURE | Adena Hefets | |
| | PRINT NAME | DATE |

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

**SCHEDULE 1: SCHEDULE OF MONTHLY OPTION PAYMENTS**

**Total Monthly Payment schedule during the Lease Term:**

| Lease Period | Monthly Rent | Monthly Option Payment | Total Monthly Payment |
|---|---|---|---|
| Year 1* (08/2022 to 08/2023) | $1,730 | $170 | $1,900 |
| Year 2 (08/2023 to 08/2024) | $1,810 | $170 | $1,980 |
| Year 3 (08/2024 to 08/2025) | $1,890 | $170 | $2,060 |

\* Please refer to the Lease for any credits that may apply to the first two (2) months of Rent.

Option Addendum 11.15.19

Tenant Initia 

**EXHIBIT A: LEGAL DESCRIPTION OF REAL PROPERTY**

The land referred to herein below is situated in the City of St Clair, County of Franklin County, State of MO and is described as follows:

A PARCEL OF LAND LOCATED IN THE STATE OF MISSOURI, COUNTY OF FRANKLIN, WITH A SITUS ADDRESS OF 111 WRENWOOD DR, SAINT CLAIR, MO 63077-2127 CURRENTLY OWNED BY GREEN ROXIE MAE HAVING A TAX ASSESSOR NUMBER OF 29-1-020-4-001-035000 AND BEING THE SAME PROPERTY MORE FULLY DESCRIBED AS LOT:21&22 BLOCK 19 LAKE ST CLAIR 16-25 BLOCK: 19 LOT: 21 AND DESCRIBED IN DOCUMENT NUMBER 18697 DATED 20060817 AND RECORDED 20060818.

**EXHIBIT B: APPROVED EXCEPTIONS**

-

11

Tenant Initia

## RENT REPORTING TO THE CREDIT BUREAUS

Bay Street Homes, LLC ("Divvy") and Grady Barton ("Tenant") have entered into a Residential Lease Agreement dated 08/10/2022. As a proposed benefit to Tenant, Divvy has partnered with a third party to offer Tenant complimentary reporting of rent payments to all credit bureaus (Experian, Transunion, Equifax) without cost or obligation to Tenant. Rent will <u>only</u> be reported if it is paid on-time. If rent is not paid, or paid late, this data will not be furnished to the credit bureaus.

[ ] Tenant elects TO NOT REPORT rent to the credit bureaus.

**[X ] Tenant elects TO REPORT rent to all credit bureaus, and will provide the below information.**

**By signing below, Tenant(s) certify(ies) and agree(s) to Divvy reporting rent to the credit bureaus. Tenant(s) acknowledges that the below information is provided for rent reporting purposes and has furnished this information on his/her/their own.**
**Tenant 1**

First Name:_ Grady
Middle Name:_ Van
Last Name:_ Barton
SSN:
DOB:_ █████████

Phone Number:_ 573-366-9159

5968A24FF4894F7...

| TENANT 1 SIGNATURE | Grady Barton | 8/4/2022 |
|---|---|---|
|  | PRINT NAME | DATE |

Tenant 2

First Name:_
Middle Name:_
Last Name:_
SSN:
DOB:_

Phone Number:_

Tenant Initial

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

TENANT 2 SIGNATURE          PRINT NAME                    DATE

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

CONSUMER CREDIT COUNSELING WAIVER

Bay Street Homes, LLC ("Divvy") and Grady Barton ("Tenant") have entered into a Residential Lease Agreement dated 08/10/2022. As a proposed benefit to Tenant, Divvy has partnered with a third party to offer Tenant complimentary consumer credit counseling without cost or obligation to Tenant. Tenant's voluntary participation in such consumer credit counseling is not a term or condition of the Residential Lease Agreement or to the execution thereof. Tenant may exercise the option to participate in voluntary consumer credit counseling at any time during the term of the Residential Lease Agreement, at no cost to Tenant, even if Tenant has previously waived consumer credit counseling; provided however, that the complimentary consumer credit offering is still being made available by Divvy and its third party partner at the time such request is made, which complimentary consumer credit program is modifiable or terminable at will by Divvy and its third party partner at any time after Tenant's initial waiver.

[                    ] Tenant would like to enroll in credit counseling (no signature required)

[                    ] Tenant elects to waive credit counseling (signature required below)

**By signing below, Tenant certifies and agrees that Divvy has offered complimentary consumer credit counseling to Tenant at no cost to Tenant. Tenant has carefully read this waiver and understands that participation in the complimentary consumer credit counseling is not a term or condition of the Residential Lease Agreement or the execution thereof.**

DocuSigned by:

5968A24FF4894F7...

| TENANT'S SIGNATURE | Grady Barton | 8/4/2022 |
| --- | --- | --- |
| | PRINT NAME | DATE |

DocuSigned by:

5968A24FF4894F7...

| TENANT'S SIGNATURE | Grady Barton | 8/4/2022 |
| --- | --- | --- |
| | PRINT NAME | DATE |

Option Addendum 11.15.19                              14                              Tenant Initial

SOFT CREDIT CHECK APPROVAL

Divvy Homes is launching its Mortgage Readiness Program to help prepare tenants for purchasing their homes. In order to best support tenants as part of this Program and based on your consent, Divvy Homes will be running a monthly soft credit check. Soft inquiries do not affect credit scores as they are not an application for credit and will provide us with more up-to-date information to work with mortgage providers. Any questions about the program can be directed to operations@divvyhomes.com.

Please sign below to consent to Divvy performing regular soft credit checks on you in connection with Divvy's Mortgage Readiness Program.

| | | |
|---|---|---|
| _____ | Grady Barton | 8/4/2022 |
| SIGNATURE | PRINT NAME | DATE |

| | | |
|---|---|---|
| _____ | _____ | _____ |
| SIGNATURE | PRINT NAME | DATE |

# FINAL WALKTHROUGH WAIVER

Divvy Homes requires that all Customers and Agents perform a final walkthrough prior to closing. The final walk-through will confirm that the home is in move-in condition and that any repairs, trash and / or belongings have been removed from the premises, and that the home has been sufficiently cleaned as agreed to by Seller.. If the home is not in acceptable condition and / or the Seller has not completed repairs by final walk-through, closing will be subject to change or delay.

Both the Divvy Customer and Agent should attend final walk-through to confirm the home is in the agreed move-in condition. The walk-through is the final opportunity to raise questions or concerns to the Divvy and the Seller. Following the final walk-through, the Divvy Customer agrees to accept condition and responsibility for the home. If the Divvy Customer elects to waive the final walkthrough or allow the Agent to serve as Proxy, the Customer will accept the same responsibility.

The requirements of the final walkthrough are as follows:

Has the Seller completed the Inspection Repairs that they agreed to (if applicable)?

Is the condition of the home, i.e. exterior, interior, and landscape, the same as initial walk-through and home inspection?

Is the home, including bedrooms, bathrooms, common areas, etc. clean and broom swept?

Are all of the Seller's personal items, belongings, debris, and/or trash removed from the house and property?

Are all keys and remote controls (including garage door openers) present and functional? Are all

appliances listed in the Purchase Agreement or subsequent amendments present? Are all smoke

detectors and carbon monoxide detectors operational?

By signing this document you are indicating one of the following:

I agree to complete the final walkthrough and understand that any items not addressed prior to close will be my responsibility

I waive my right to attend final walkthrough and understand that any items not addressed prior to close will be my responsibility

Grady Barton                    8/4/2022

_____        _____
Name                             Date

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

727075470



# HOME OPERATIONS PROGRAM

Welcome aboard! We're excited to have you as a Divvy Customer and to help guide your transition into homeownership. As the future owner of the home, we expect you to safeguard your investment by sharing basic home operations and maintenance responsibilities with us! This Home Operations Program outlines that you and we share in operating and maintaining the home. The Home Operations Program is at all times subject to the terms of your lease.

## Home Inspection

Our inspection team reviews the most critical systems in your home, such as the roof, plumbing, electrical, and HVAC, with a goal of minimizing any big-ticket, imminent costs. The inspectors also review your home with an eye toward basic mortgage lender requirements, with the intention of minimizing any repairs you would otherwise need to address when you purchase the home at the end of your lease. The inspector may identify cosmetic repairs and will assess the condition of appliances for you to consider. Please note that under the terms of the lease, repairs and maintenance for appliances and cosmetic issues will be your responsibility. Although we don't require it,, we strongly encourage you to attend and participate in the inspection. It is an excellent way to learn about your future home and all of the different systems within!

## Final Walk-Through

During the closing process, Divvy requires that you perform a final walk-through of your soon-to-be home with your agent. The purpose of the walk-through is to allow you the opportunity to confirm that you accept the home's current condition and cleanliness. Additionally, this will also allow you the opportunity to review any inspection repairs that the seller promised to address prior to closing. Please be aware that any items left behind by the seller (e.g. belongings, debris, cosmetic damage) that are not brought to our attention prior to closing will be your responsibility.

## Utilities

You are responsible for both the set-up of utilities and ongoing payments. Your real estate agent will provide you with the contact information for utilities that service the home. In some cases, the utility companies require an owner account for a tenant to establish service. We will ensure that the account is established in these cases, but all financial responsibility relating to these utilities will remain with you. Please note that the transfer time for utilities varies by county and we may be unable to expedite utility transfer depending on the city requirements for establishing an account.

Upon move-in, please make sure you know the location of the main shut-off valves for gas and water and the location of the electrical panel. If you smell gas, detect a water leak, or have an electrical emergency, turn the systems off at the shut-off locations immediately to prevent further damage.

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

*Main Water Shut-off:*  Typically located where the water enters the house or at the water supply line at the water heater and can be rotated clockwise to the "closed" position.

*Main Gas Shut-off:*  Typically located at the gas meter and can be rotated to the "closed" position in case of an emergency.

*Main Electrical Shut-off:*  Typically located at the main electrical panel as the "main circuit breaker"and can be flipped to the "off" position.

## Home Maintenance

As the future homeowner, we expect you to share basic maintenance responsibilities with us.  You will be responsible for seasonal and preventative maintenance (e.g. changing your HVAC filters, landscaping, gutter cleaning, common pest control, etc.).  Divvy will ensure the home is safe and that critical systems (e.g. roof, structure, HVAC, plumbing, and electrical) are operational.  The Divvy program will prepare you for the responsibilities related to owning a home and help reduce your utility costs and increase the life of the critical systems within your home -avoiding big-ticket costs down the road!

Divvy does not cover cosmetic repairs or the purchase or repair of appliances. However, we encourage you to make your home...your home!  Minor alterations, such as interior and exterior painting, flooring, countertops, landscaping are acceptable and do not need Divvy's approval; however, home modifications, such as additions or revisions to the structure, mechanical, or plumbing systems, or work requiring a permit or HOA approval of any kind are not allowed.

## Emergencies

If you experience an emergency, i.e. fire, gas leak, etc., please call *911* **immediately.**  After contacting emergency services, please call our maintenance department immediately, so that we can assist in the best way possible.

Maintenance Department:  1 (833) 600-0096, Option #3

## Theft

Please notify the police immediately and then provide us a copy of the report no later than the following business day after receipt of the report.

## Submit a Maintenance and Repair Request

Upon receipt of a maintenance request, we will access our substantial network of preferred, vetted, and insured vendors and quickly dispatch them to address your maintenance issue.

Should you wish to address repairs on your own, please note that maintenance requests must be submitted to, reviewed by, and approved by us prior to execution of any work in order for Divvy to cover associated costs. Upon review of estimates, we will either approve costs or further assist by contacting a third-party vendor for additional pricing should costs or scope of work be inaccurate or noncompetitive.

Assuming you find an issue within your home and you determine that the repair meets the requirements below as our responsibility, please follow these steps to submit a Maintenance and Repair Request.

1. Log on to your account at Divvy Homes Portal - https://www.divvyhomes.com/portal/

2. Select "Requests" and complete the Maintenance Request Form:
   - **Name:** Enter your full name
   - **Street Address:** Enter your full street address
   - **State:** Enter your state
   - **Issue Related To:** Select the area of the home to which the maintenance request applies, i.e. if you have an active plumbing leak, select "Plumbing"
   - **Description of Issue**: Describe issue(s) in as much detail as possible, i.e. "The water heater is leaking, creating standing water on the floor."
   - **Photograph:** Upload a photograph of the issue that clearly depicts the problem, which will help expedite the repair process.

3. If the issue is urgent but not an emergency, i.e. a non-functional furnace in the middle of winter, you can also email maintenance@divvyhomes.com with an additional description and photos of the issue *AFTER* you've submitted a request through your customer portal.

## What maintenance will Divvy cover?

**Heating & Cooling Systems**
- Furnaces/heat source and distribution, ensuring heating abilities between 60-75 degrees
- Air Conditioner (if present) and distribution, ensuring cooling abilities between 60-75 degrees

**Plumbing Systems**
- Water heater and plumbing distribution, including main supply and main sanitary/sewer lines
- Active leaks from below grade and in-wall lines and fixtures not caused due by improper use of system
- Water pressure that deviates from the standard range of 40 to 80 psi

**Electrical Systems**
- Main Electrical Panel and distribution, including outlets and switches
- Initial installation of sufficient smoke detectors and carbon monoxide sensors
- Maintenance of existing garage door motor, door, springs, and cables

**Structure**
- Structural integrity and performance of the roof, chimney, foundation, elevated decks, etc.
- Pest control to address infestations that compromise the structural integrity of the property (e.g., termites, carpenter ants, etc.)
- Mold remediation

**Exterior**
- Trees that pose risk to home or neighbor's home at our discretion

**Water Intrusion**
- Leaks associated with the performance of the roof system or plumbing system
- Leaks impacting the structural integrity of or finishes within the home

## What maintenance is the future homeowner's responsibility?

**Heating & Cooling Systems**
- Monitor, supply, and replace HVAC air filters every 30 to 60 days
- Maintaining thermostat setting between 68 and 74 degrees
- Maintenance of HVAC units, i.e. condensers and heat sources, registers, fans, vents, and fireplaces

**Plumbing Systems**
- Maintenance and pressure of plumbing fixtures that is within the standard range of 40 to 80 psi
- Maintenance and winterization of exterior plumbing systems (hose bibs, irrigation, pools, etc.)
- Maintenance of household faucets, drains, and drainage systems
- Localized stoppage or blockage at fixture due to lack of maintenance or misuse (except when caused by roots or breakdown of fixture not caused by tenant)
- Running toilets that occur post occupancy and require adjustment of parts
- Performance and maintenance of interiors spas and jets (e.g., whirlpool tubs)
- Understand the location and operation of the main water shut-off to mitigate any potential damage

**Electrical Systems**
- Supply, change, and maintain interior and exterior light bulbs and fixtures
- Supply and replace batteries for smoke detectors and carbon monoxide detectors
- Supply and replace batteries for garage door openers, ceiling fan remotes and other
- Understand the location and operation of the all electrical breakers and how to switch breakers off to mitigate any potential damage

**Household Appliances**
- Purchase, maintenance, repair of appliances (i.e. refrigerator, stove/oven, dishwasher, vent hood, garbage disposal, washing and drying equipment)
- Alteration of the utility and/or utility connection for appliances

**Water Intrusion**
- Foundation water intrusion in unfinished basements/crawl space due to age of structure and previous construction methods
- Removal of standing water in unfinished spaces due to water intrusion

**Exterior**
- Performance and maintenance of exterior structures, i.e. sheds, fences, hardscapes, etc.
- Maintenance of storm doors and windows, screens, and weather stripping
- Gutter cleaning and drainage maintenance
- Lawn care and landscape maintenance

**Interior**
- Existence of common vermin and pests, non-structure impacting (e.g., mice, ants, squirrels, etc.)
- Interior finishes and performance, i.e. walls, flooring, doors, cabinets, etc.
- Remove any standing water during the occurrence of leak or water intrusion

## <u>Pools, Hot Tubs, and/or Spas (if applicable)</u>

1. Please be aware that use of the swimming pool, spa and/or hot tub is at your own risk. We will not be responsible for any injuries sustained by you, your occupants, your guests and/or invitees in connection with the swimming pool, spa and/or hot tub.

2. We are responsible for the initial inspection of the pool/spa/hot tub and the disclosure of any apparent defects that arise as a result of said inspection.
3. We are responsible for ensuring that all gates are structurally sound, self-closing, and lockable at the time of inspection and/or move-in.
4. You are responsible for general maintenance of the swimming pool, spa and/or hot tub. This includes, but is not limited to, keeping the swimming pool, spa and/or hot tub neat, organized, and clean of debris.  You are responsible for ensuring the proper levels of chemicals to maintain the quality of the pool, spa and/or hot tub water.
5. You are responsible for the full cost of maintenance, repair, and/or replacement of the swimming pool, spa and/or hot tub if such repair and/or replacement is necessary as a result of negligence or misconduct by you, your occupants, guests and/or invitees.
6. You must always operate the swimming pool, spa and/or hot tub in accordance with the manufacturer's instructions.
7. Safety features have been installed at the home to ensure compliance with state/city/local pool safety laws. You are responsible for maintaining such safety  features.  You must notify us immediately if any safety features are faulty, broken, or missing.  This includes but is not limited to pool guards, gates (including latches, locks and alarms), and fence enclosures.
8. No pets or glass of any kind are permitted in or around the swimming pool, spa and/or hot tub at any time.
9. You understand that the swimming pool, spa and/or hot tub are strictly an amenity, and that the use of this amenity is not guaranteed under the lease. Any interruption or unavailability of the swimming pool, spa and/or hot tub will not be deemed a violation of our  obligations under the Lease.
10. You acknowledge and agree that we do not guarantee that the swimming pool will be heated and/or heatable. A "heated and/or heatable" swimming pool is strictly an amenity, the use of which is not guaranteed under the Lease. Any interruption or non-availability of the use of a "heated and/or heatable" swimming pool will not be deemed a violation by Landlord of any obligation or covenant under the Lease.

## Water Intrusion Events and Mold

Both you and we have various duties and responsibilities when dealing with water intrusion events and/or mold in the home. In the event of a water intrusion event and/or upon the discovery of mold in the home, you must notify us immediately in writing.

1. Tenant will report to Landlord in writing of any visible or suspected water intrusion event or mold, including, but not limited to:
   a. visible or suspected mold,
   b. air conditioning problems or spillage,
   c. plant watering overflows,
   d. musty odors,
   e. leaky faucets or plumbing issues,
   f. pet urine accidents, and
   g. discoloration of any porous surfaces including walls, baseboards, doors, window frames, and ceilings.

2. Mold is made up of naturally occurring microscopic organisms which reproduce spores.  Mold breaks down and feeds on organic matter that naturally occurs in the environment.  The mold spores scatter through the air and the combination of moisture and organic matter allows the mold to grow. Certain

types of mold can lead to serious health risks and/or allergic reactions. Not all mold is readily visible. Mold may appear as a form of discoloration, that ranges from white to orange or from green to brown or black.  You may also notice the presence of a musty odor. Minimizing moisture along with regular housekeeping helps reduce mold and mold growth. You are responsible for taking appropriate precautions to minimize the potential for mold growth.

3. If small areas of mold are already present or occur on non-porous surfaces, (e.g. ceramic tile, Formica, vinyl flooring, metal, wood or plastic), you are responsible for cleaning the surface with a soap and water mixture, letting the surface area dry and then, within twenty-four (24) hours, applying a household disinfectant spray such as Lysol Disinfectant or Pine-Sol Disinfectant. Please be aware that products containing bleach may discolor or stain the surface.

4. Do not apply household cleaners to visible mold on porous surfaces such as sheetrock walls or ceilings. Please notify us in writing and we will take appropriate action.

5. If you fail to strictly comply with mold reduction obligations, you may be held responsible for all damage to the home in connection with mold and any health problems that may develop as a result thereof.

6. Please refer to the United States Environmental Protection Agency's "A Basic Guide to Mold, Moisture and Your Home" which is available at www.epa.gov/mold/pdfs/moldguide.pdf.

## Seasonal Maintenance Program

The Seasonal Maintenance Program highlights standard maintenance items that we recommend you inspect and maintain periodically or during seasons.  These recommendations will improve the efficiency of your home and reduce utility costs.  Ultimately, these recommendations will help reduce the frequency of repairs, prevent unnecessary spending down the road, and increase the lifespan of the home.

**General Maintenance - Monthly**
- Change HVAC Filter, typically located near your furnace/heat source, often in the basement, attic, or crawl space.
- Test smoke detectors and carbon monoxide detectors, replacing batteries if needed
- Clean drains in showers, tubs, sinks, and dishwasher
- Inspect/clean dryer and exhaust vents
- Inspect fire extinguishers

**Winter Maintenance**
- Remove snow and ice from all access and egress paths after a storm
- Clean/vacuum HVAC registers & fans
- Inspect for ice dams & icicles weekly
- Winterize exterior hose bibs, remove hoses, and turn off valve to hose bibs before winter months.
- Monitor all plumbing to ensure proper insulation around pipes to avoid bursts

**Spring Maintenance**
- Inspect/clean gutters
- Clear landscape of dead plants/shrubs/leaves
- Inspect windows and screens
- Inspect foundations and hardscapes (patios, walkways) for cracking or frost heave

**Summer Maintenance**
- Inspect foundations, decks, patios, decks and stairs for pests
- Clean out perimeter window wells
- Inspect sump pump line to ensure proper operations

**Fall Maintenance**

- Inspect/clean gutters
- Ensure all downspouts are properly extended, moving water away from foundation and to a low point in the yard
- Flush hot water heater & remove sediment
- Turn off & flush outdoor water faucets/lines and remove all hoses
- Inspect/clean chimney, flue, and fireplace
- Clear landscape of leaves

DocuSign Envelope ID: 2133CFAB-53D3-478D-8B94-99210EB7C9F2

## Preparing Tenants

Current tenants should be provided with educational materials informing them of the steps that can be taken by families to prevent Lead Poisoning. It is important that tenants take responsibility to protect themselves and their families from lead exposure.

Landlords must give prospective tenants the following:

1) An EPA-approved information pamphlet on identifying and controlling lead-based paint hazards

2) Any known information concerning lead-based paint or hazards pertaining to the building

3) A lead disclosure attachment to the lease, or language inserted in the lease, that includes a "Lead Warning Statement" and confirms that you have complied with all requirements

Lead poisoning poses serious health threats to adults and especially children. Even low levels of lead in a fetus or young child can produce a variety of impairments and health related problems, including reduced intelligence and decreased attention span, learning disabilities, hearing impairments, and behavioral problems. The most common exposure to lead hazards come from paint, soil, and dust hazards. These conditions are most commonly found in homes built before 1978.

# The Landlord Guide

*Toledo Lead Safe Ordinance*



**Toledo-Lucas County Health Department**
635 N Erie St
Toledo, OH 43604
419-213-4100
419-213-4017 Fax

www.lucascountyhealth.com



## The City of Toledo Lead Ordinance

In efforts to prevent lead poisoning the City of Toledo is requiring that any rental properties (4 units or less) and in-home daycares constructed prior to 1978 be registered with the Toledo-Lucas County Health Department and obtain a Lead-Safe Certification by September 17, 2017.

## The First Step

Rental property owners will need each unit that is owned and constructed prior to 1978 to be inspected by a Local Lead Inspector. A Local Lead Inspector is considered an individual that is registered through the Toledo-Lucas County Health Department, licensed by the Ohio Department of Health as a lead risk assessor, lead inspector, or clearance technician. If an individual is not registered through the Toledo-Lucas County Health Department, they are not qualified to do an inspection according to the ordinance.

The Toledo-Lucas County Health Department will maintain an updated listing of Local Lead Inspectors on its website.

## Preparing for Inspection

We encourage landlords to work with the Local Lead Inspector to prepare the unit for inspection. The unit should be free of deteriorating paint and there should be no bare soil on the dripline (a three foot area surrounding the structure of the unit).

Although it may be easiest for the unit to be vacant at the time of inspection, it is not necessary or advised

to evict current tenants from the unit. The Toledo-Lucas County Health Department provides a checklist for preparation tips for a lead dust wipe inspection on its website.



## A Clean Report

Upon passing the inspection, your Local Lead Inspector will provide you with the paperwork to help you complete registration for your property. The following items are needed in order to register your property:

1) A completed application
2) A *Lead-Safe Report* issued by a Local Lead Inspector
3) A filing fee of $45.00

Once these items are submitted to the Toledo-Lucas County Health Department they will be processed and a Lead Safe Certificate will be issued.

## An Unsatisfactory Inspection

If the property does not pass the lead-safe inspection, the owner of the unit is required to prepare the house for re-inspection. This may include repainting, remodeling, removal or permanent covering of lead-contaminated soil, or cleaning the unit as recommended by the Local Lead Inspector. Please be aware of EPA RRP Rules when conducting work.

## How long does the Lead-Safe Certificate last?

The "Lead-Safe Certificate" will expire from the date of issuance as follows:

1) Three years from the date of issuance for any property that fails the initial visual inspection or dust wipe test
2) Six years from the date of issuance for any property that passes the initial visual and dust wipe inspection
3) Twenty years from the date of issuance if the Residential Rental Property or Family Child Care Home has undergone proper Lead Abatement and can provide proof

## Fines for Non-Compliance

Anyone found in violation of the ordinance after September 17, 2017 is subject to a $50.00 per day fine per unit with a maximum penalty of $10,000 per year per unit.

## Changes in Residency or Ownership

Properties undergoing *sales, purchases,* or *transfers of ownership* must be issued an updated "Lead-Safe Certificate" in the name of the new Owner. The certificate will expire on the same date as indicated on the original certificate.

If occupancy of the property changes, the owner is responsible for completing and submitting a "Tenancy Update Form" to the Toledo-Lucas County Health Department within 10 days of the change.